[This opinion has been published in *Ohio Official Reports* at 74 Ohio St.3d 506.]

FISHER, APPELLEE, *v.* NEUSSER, TAX COMMR., ET AL., APPELLANTS.

[Cite as *Fisher v. Neusser*, 1996-Ohio-172.]

*Taxation—Income tax—Municipal corporation not precluded from levying income tax on lottery winnings received by its residents.*

———————

Lottery winnings arise from gambling and are not "intangible income" as that term is defined in R.C. 718.01(A)(4), and, therefore, municipal corporations are not precluded from levying an income tax thereon by virtue of R.C. 718.01(F)(3).

———————

(No. 94-1907—Submitted December 5, 1995—Decided February 14, 1996.)

APPEAL from the Court of Appeals for Summit County, No. 16491.

———————

{¶ 1} In August 1991, appellee Duane N. Fisher, a resident of appellant city of Akron, won the Ohio Super Lotto and received a lump sum cash prize of $8,480,597. Pursuant to Section A.1.b.(4), Article III of the Akron Tax Code Rules and Regulations, the city imposes upon its residents an annual income tax of two percent on "lottery winnings." Accordingly, on November 15, 1991, the city's Deputy Tax Commissioner informed Fisher that "[t]he city income tax assessed on these winnings is $169,611.94." Fisher paid the tax under protest and requested reconsideration of its imposition. Appellant, James A. Neusser, Tax Commissioner for the city of Akron, confirmed the imposition of the tax and Fisher appealed to the Income Tax Board of Review. On May 21, 1992, the board of review upheld the decision of the tax commissioner and Fisher appealed to the Summit County Court of Common Pleas.

**{¶ 2}** The trial court reversed the decision of the board of review, finding that "lottery proceeds are intangible income and precluded from taxation by any municipality pursuant to [R.C.] 718.01(F)(3)." In particular, the trial court found that "the nature of a state lottery ticket and the rights which accrue to its purchaser" fall within the definition of investment set forth in R.C. 5701.06(C) and hence are intangible income under R.C. 718.01. The court of appeals affirmed the decision of the trial court.

**{¶ 3}** The cause is now before the court pursuant to the allowance of a discretionary appeal.

————————————

*Christoff, Slater, Haskins & Zurz* and *Richard V. Zurz, Jr.,* for appellee.

*Thompson, Hine & Flory, Leslie W. Jacobs* and *Stephen L. Buescher; Akron Law Department, Max Rothal*, Director of law and *David A. Muntean,* Assistant Director of Law, for appellants.

*John E. Gotherman,* urging reversal for *amicus curiae*, Ohio Municipal League*;* Cleveland Law Department, *Sharon Sobol Jordan,* Director of Law, and *Debra D. Rosman,* Assistant Director of Law*,* urging reversal for *amici curiae* city of Cleveland and Central Collection Agency.

————————————

**ALICE ROBIE RESNICK, J.**

**{¶ 4}** The issue is whether an Ohio municipality has the power to levy an income tax on lottery winnings received by its residents.

**{¶ 5}** Ohio municipalities "have the right to exercise all powers of local self-government and may adopt and enforce such local regulations that are not in conflict with the general law. Sections 3 and 7, Article XVIII, Ohio Constitution. Included within the above grant of authority is the power of taxation. See *State ex rel. Zielonka, City Solr. v. Carrel, Aud.* [1919] 99 Ohio St. 220[, 124 N.E. 134]."

*Thompson v. Cincinnati* (1965), 2 Ohio St.2d 292, 294, 31 O.O.2d 563, 564, 208 N.E.2d 747, 749-750.

{¶ 6} That power, however, is subject to "pre-emption by the General Assembly of the field of income taxation and subject to the power of the General Assembly to limit the power of municipalities to levy taxes under Section 13 of Article XVIII or Section 6 of Article XIII of the Ohio Constitution." *Angell v. Toledo* (1950), 153 Ohio St. 179, 41 O.O. 217, 91 N.E.2d 250, paragraph one of the syllabus.

{¶ 7} In 1971, the General Assembly enacted R.C. Chapter 5747 to provide for an annual individual state income tax. Effective July 1, 1989, the General Assembly enacted Am.Sub.H.B. No. 111, 143 Ohio Laws, Part II, 2330, 2615, which amended R.C. 5747.02 to provide for an annual income tax "on every individual and estate earning or receiving lottery winnings, prizes or awards pursuant to Chapter 3770. of the Revised Code." However, R.C. 5747.02 specifically disclaims any intent to preempt income taxation by municipalities.

{¶ 8} R.C. 5707.03 and 5707.04 imposed a state property tax on intangibles, measured by income yield. In *Ohio Fin. Co. v. Toledo* (1955), 163 Ohio St. 81, 83, 56 O.O. 74, 75, 125 N.E.2d 731, 732, the court held that "[i]t is apparent therefore that the General Assembly has occupied a field which includes taxation of the income yield from intangibles." Subsequent legislation, however, in effect repealed these sections. As explained by the court of appeals in *Columbus Div. of Income Tax v. Boles* (1992), 78 Ohio App.3d 617, 624-625, 605 N.E.2d 981, 986:

"*** The state property taxes on intangibles in R.C. 5707.03 and 5707.04 were phased out by enactment of Am.Sub.H.B. No. 291 in 1983. The last year for such taxes was 1985. Thus, the door was then opened for this type of income taxation.

"Because of this, the Uniform Municipal Income Tax Act was amended in 1986 by Am.Sub.S.B. No. 238. By this enactment, division (C) [now division

(F)(3)] was added to R.C. 718.01 to prevent taxation [by municipal corporations] of 'intangible' income."

{¶ 9} Thus, although the power of municipalities to levy an income tax is not impliedly preempted, it is limited, as relevant here, to the extent that R.C. 718.01(F)(3) precludes municipalities from taxing intangible income.

{¶ 10} R.C. 718.01(A)(4) defines "intangible income" as "income of any of the following types: income yield, interest, dividends, or other income arising from the ownership, sale, exchange, or other disposition of intangible property including, but not limited to, investments, deposits, money, or credits as those terms are defined in Chapter 5701. of the Revised Code."

{¶ 11} R.C. 5701.06(C)[1] defines "investments" as including, among other things, "Annuities, royalties, and other contractual obligations for the periodical

---

1. R.C. 5701.06 provides as follows:
    "As used in Title LVII of the Revised Code, 'investments' includes:
    "(A) Shares of stock in corporations, associations, and joint-stock companies, under whatever laws organized or existing, excepting:
    "(1) Those which are instrumentalities of the federal government for the taxation of which by the several states no provision is made by act of the congress of the United States;
    "(2) Those in financial institutions, dealers in intangibles, and domestic insurance companies as defined in section 5725.01 of the Revised Code;
    "(3) Those defined as deposits by section 5701.05 of the Revised Code.
    "(B) Interest-bearing obligations for the payment of money, such as bonds, certificates of indebtedness, debentures, and notes; certificates of deposit, savings, and other like deposits in financial institutions outside this state yielding income by way of interest or dividends in excess of four per cent of the principal sum withdrawable; and other similar evidences of indebtedness, whether negotiable or not, and whether or not secured by mortgage of or lien upon real or personal property or income, [by] whomsoever issued, excepting those issued:
    "(1) By the United States or any of its territories, districts, or dependencies;
    "(2) By any instrumentality of the federal government;
    "(3) Prior to January 1, 1913, by the state of Ohio or any political or other subdivision or school district in this state;
    "(4) Pursuant to Section 2a of Article VIII, Ohio Constitution;
    "(5) Which are defined in sections 5701.05 and 5701.07 of the Revised Code as deposits and current accounts.
    "(C) Annuities, royalties, and other contractual obligations for the periodical payment of money and all contractual and other incorporeal rights of a pecuniary nature from which income is or may be derived, however evidenced, excepting:
    "(1) Interests in land and rents and royalties derived therefrom, other than equitable interests divided into shares evidenced by transferable certificates;

payment of money and all contractual and other incorporeal rights of a pecuniary nature from which income is or may be derived, however evidenced," excepting five categories not relevant here.

{¶ 12} The lower courts found that lottery winnings constitute intangible income under R.C. 718.01(A)(4) and are precluded from taxation by any municipality pursuant to R.C. 718.01(F)(3). The courts' basis for this conclusion was twofold. First, the lower courts found that lottery winnings result from the disposition of intangible property, *i.e.*, the lottery ticket. A lottery ticket is intangible property because it is an asset that represents valuable legal rights to the holder, but has no physical substance or intrinsic value; and since the language of R.C. 718.01(A)(4) is inclusive, and not limiting, it can be read to encompass income arising from a lottery ticket.

{¶ 13} Second, "the nature of a state lottery ticket and the rights which accrue to the purchaser establish that it is a contractual relationship for value given with the right to payment from the State of an indefinite sum upon the happening of a condition subsequent, *i.e.*[,] the correct identification of randomly selected numbers." By this characterization, the courts were able to pigeonhole lotteries into the investment classification of R.C. 5701.06(C), and bring lottery winnings within R.C. 718.01(A)(4)'s definition of "intangible income."

---

"(2) Contracts of employment or partnership, salaries, wages, commissions, seniority and other incorporeal rights derived from any such contract, and retirement annuities or plans that result from contracts of employment;

"(3) Contracts of insurance, and dividends paid or applied thereunder; but dividends under contracts commonly known as 'combination life and annuity policies' or 'cash refund annuities' shall not be excluded from taxation;

"(4) Stock purchase, pension, or profit-sharing plans established by an employer for the benefit of his employees or those of his subsidiaries;

"(5) Ownership interests of the depositors in an incorporated financial institution, the capital of which is not divided into shares, or which has no capital stock.

"(D) All equitable interests, life or other limited estates, and annuity interests in any investment described in this section, or in any fund made up in whole or in part of any such investments, wherever located."

{¶ 14} A lottery is a game of chance and is gambling. "[A] lottery is a species or form of gambling." *Westerhaus Co. v. Cincinnati* (1956), 165 Ohio St. 327, 339, 59 O.O. 428, 434, 135 N.E.2d 318, 327. It is "a scheme for the distribution of prizes by lot or chance." *Troy Amusement Co. v. Attenweiler* (1940), 64 Ohio App. 105, 116, 17 O.O. 443, 448, 28 N.E.2d 207, 213; see *Stevens v. Cincinnati Times-Star Co.* (1905), 72 Ohio St. 112, 73 N.E. 1058. The essential elements of a lottery are prize, chance and consideration. *Finster v. Keller* (1971), 18 Cal.App.3d 836, 843, 96 Cal.Rptr. 241, 245. See, generally, 51 Ohio Jurisprudence 3d (1984) 429, Gambling, Section 5; 54 Corpus Juris Secundum, Lotteries (1987) 485-488, Sections 3 through 6.

{¶ 15} A lottery ticket is a chance. *United States v. Baker* (C.A.3, 1966), 364 F.2d 107, 111. It is "'merely the evidence or token of the holder's participation in the lottery and the number which determines his right to share in the distribution resolved by chance after the sale.'" *Silbert v. State* (1971), 12 Md.App. 516, 533, 280 A.2d 55, 65, quoting *State v. Friedman* (1947), 135 N.J.L. 419, 420-421, 52 A.2d 416, 418, affirmed *State v. Friedman* (1948), 136 N.J.L. 634, 57 A.2d 390.

{¶ 16} The scope of the term "investment" is ultimately determined by how it is defined in R.C. 5701.06. However, since R.C. 5701.06 is inclusive in nature, and makes no specific reference to lottery winnings, of necessity, for legal construction, we are required to consult the common definitions to ascertain whether lottery winnings can fairly be classified as investments within the language of R.C. 5701.06(C). The term "investment" is defined in Webster's Third New International Dictionary (1986) 1190, as "the expenditure of money for income or profit." Black's Law Dictionary (6 Ed.1990) 825, defines "investment" as "[a]n expenditure to acquire property or other assets in order to produce revenue; the asset so acquired. The placing of capital or laying out of money in a way intended to secure income or profit from its employment." Similarly, "investment" has been judicially defined as "the laying out of money with the view of obtaining an income

or profit from the thing bought, whether it be an interest in a business, a farm, stocks or bonds; to place money so that it will be safe and yield a profit." *State v. Gibbs* (1908), 18 Ohio Dec. 694, 696, 7 Ohio N.P. (N.S.) 371, 372-373.

{¶ 17} In *State ex rel. Atty. Gen. v. Interstate Savings Invest. Co.* (1901), 64 Ohio St. 283, 60 N.E. 220, paragraph one of the syllabus, the court held:

"Contracts of investment security, debentures or certificates, which by the device of a 'numeral-apart,' may be called in and redeemed at any period before they would regularly accumulate a credit in the reserve fund equal to the stipulated endowment value, and otherwise giving unequal advantages to the certificate holders, contain the elements of chance and prize constituting a lottery, and are unlawful."

{¶ 18} Other courts have similarly held with respect to bonds issued according to a scheme involving the elements of chance and prize. *Silver v. Guarantee Invest. Co.* (1904), 183 Mo. 41, 81 S.W. 1098; *Horner v. United States* (1893), 147 U.S. 449, 13 S.Ct. 409, 37 L.Ed. 237; *Ballock v. State* (1890), 73 Md. 1, 20 A. 184.

{¶ 19} In a colorful opinion issued by the court in *United States v. McDonald* (D.C.Ill.1893), 59 F. 563, it was held that a bond investment scheme dependent upon the probability of lapses (possessing characteristics similar to the investment scheme at issue in *Interstate Savings Invest. Co., supra*) is a scheme in which the prize is dependent upon chance and, therefore, constitutes a lottery. The court explained as follows:

"Now, every enterprise in which we engage has a return or prize, or is supposed to have. That is the incentive which makes men industrious and active. Whether that return or prize be determinable by mere lot or chance makes it either a legitimate enterprise, or a lottery, and therefore an unlawful enterprise. We perhaps can illustrate that best by referring to some of the schemes of life in which men are engaged. Take, for instance, the life insurance companies, --those that

proceed either on the stock plan or on the assessment plan. They require of the member that he pay in a certain amount of money. That is the pecuniary consideration. That money is invested, or supposed to be invested, in securities, and, when the member dies, a certain amount, stipulated in the policy, is paid to his heirs or the beneficiary named in the policy. That is the return. The man may have been insured but a month, and have paid in but a few dollars, and have received back $5,000 or $10,000. In such instances as that, a much larger sum has been returned than the consideration, but the fact that there was such a return does not make it an unlawful enterprise. Why? Because the prize is not determinable by, or dependent upon, chance or lot. It is dependent upon the life of a man, and the life of a man is determined by the laws of nature, and not by the chances of lot.

"A man who makes an investment in real estate may put in a few thousand dollars, and take out a million. What he puts in is the consideration; what he takes out is the prize. It may be a hundredfold larger than what he puts in, but on what is it dependent? Upon the growth of the town in which he lives; upon the growth of public sentiment respecting the value of property in that particular locality; upon the law of growth, which is itself a natural one,--an industrial law. But suppose a man puts a ticket in a hat with a hundred other tickets, and then it is drawn by a blindfolded man, his chance of the prize offered is dependent upon that drawing. The ticket may cost but 50 cents. The prize may be worth $10,--much larger than the price of the ticket, though not larger in proportion than the life insurance policy or the real estate investment. But the getting of the prize is dependent upon the chance or lot of his ticket being drawn, not upon any natural law, as a man's life, nor upon any industrial growth, as the growth of the value of real estate. This illustrates to you the difference between legitimate investments, which may yield, according to the good fortune of the investor, a hundredfold more than the amount invested, and a gambling investment, according to a lottery, which can only yield

8

in case the allotment or chance, which is purely artificial, turns in his favor." *Id.* at 565-566.

{¶ 20} With this in mind, we cannot find R.C. 718.01(A)(4)'s definition of "intangible income" to include games or schemes of chance. Semantics aside, lotteries or lottery tickets are not investments, deposits, money or credits, nor are they of the same class, kind or nature of such items of intangible property. They are a species or form of gambling, distinguished from other enterprises by virtue of the element of chance. Absent a clear intention by the General Assembly, we cannot place what is essentially gambling income into the same fortress of protection from municipal taxation erected for income from such sources as stocks, bonds, certificates, debentures, notes, deposits, annuities, royalties, money and credits.

{¶ 21} Accordingly, we hold that lottery winnings are not "intangible income" as that term is defined in R.C. 718.01(A)(4), and, therefore, municipal corporations are not precluded from levying an income tax thereon by virtue of R.C. 718.01(F)(3).

{¶ 22} In light of our disposition of this issue, it is unnecessary to address appellants' second proposition of law, relative to whether injunctive relief is available to a taxpayer who has filed an appeal from an administrative proceeding under R.C. 2506.01. Accordingly, the judgment of the court of appeals is reversed.

*Judgment reversed.*

MOYER, C.J., DOUGLAS, WRIGHT, F.E. SWEENEY, PFEIFER and CHRISTLEY, JJ., CONCUR.

JUDITH A. CHRISTLEY, J., of the Eleventh Appellate District, sitting for COOK, J.

————————————