PICKAWAY COUNTY SKILLED GAMING, L.L.C., et al., Appellants,

v.

Richard CORDRAY, Atty. Gen., et al., Appellees.

[Cite as *Pickaway Cty. Skilled Gaming, L.L.C. v. Cordray,*
183 Ohio App.3d 390, 2009-Ohio-3483.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 08AP–1032.

Decided July 16, 2009.

392

Butler, Cincione & DiCuccio, Gail M. Zalimeni, N. Gerald DiCuccio, and Alphonse P. Cincione; and Melissa R. Lipchak, for appellants.

Richard Cordray, Attorney General, Randall W. Knutti, Brian M. Kneafsey Jr., and Christopher P. Conomy, for appellees.

SADLER, Judge.

{¶ 1} Plaintiffs-appellants, Pickaway County Skilled Gaming, L.L.C., d.b.a. Spinners Skill Stop Game ("Spinners"), and Stephen S. Cline (collectively "appellants"), appeal from the judgment of the Franklin County Court of Common Pleas, in which that court denied appellants' motion for summary judgment and granted the motion for summary judgment of defendants-appellees, Richard Cordray, Ohio Attorney General; Henry Guzman, Director, Ohio Department of Public Safety; Dwight E. Radcliff, Pickaway County Sheriff; and Judy Wolford, Pickaway County Prosecuting Attorney, as to appellants' claims for declaratory judgment.

{¶ 2} The following undisputed facts are found in the record. Cline owns and operates Spinners. Spinners is an amusement game arcade located in Circleville, Ohio. Spinners is a members-only organization that requires members to pay an annual fee in exchange for membership rights and privileges. The arcade contains 150 game machines for use by its members, including "Queen Bee," "Fruit Bonus 2004," "Mystery J & B 2003," "Crazy Bugs," "New Cherry," "Monkey Land," "Rosen' Jack 2003," and "Triple Jack 2003."

{¶ 3} Chapter 2915 of the Ohio Revised Code concerns gambling crimes. R.C. 2915.02(A)(2) provides, "No person shall * * * [e]stablish, promote, or operate or knowingly engage in conduct that facilitates any game of chance conducted for profit or any scheme of chance." Pursuant to R.C. 2915.01(C), "scheme of chance" does not include a "skill-based amusement machine." Formerly, a "skill-based amusement machine" was defined as:

[A] skill-based amusement device, such as a mechanical, electronic, video, or digital device, or machine, whether or not the skill-based amusement machine requires payment for use through a coin or bill validator or other payment of consideration or value to participate in the machine's offering or to activate the machine, provided that all of the following apply:

(a) The machine involves a task, game, play, contest, competition, or tournament in which the player actively participates in the task, game, play, contest, competition, or tournament.

(b) The outcome of an individual's play and participation is not determined largely or wholly by chance.

(c) The outcome of play during a game is not controlled by a person not actively participating in the game.

Am.Sub.S.B. No. 146, 150 Ohio Laws, Part V, 7787, 7812–7813.

{¶ 4} On August 22, 2007, Ohio Governor Ted Strickland issued Executive Order 2007–28S, in which he stated, "In order for the State to enhance and strengthen its efforts to eliminate illegal gambling machines in our communities, changes to the Ohio Administrative Code regarding these machines, and requiring businesses who manufacture, distribute, and operate these machines to adhere to existing consumer protection laws, must be enacted immediately."

{¶ 5} The governor went on to declare an emergency justifying the suspension of the normal rulemaking process under R.C. Chapter 119 and, at the request of then Ohio Attorney General Marc Dann, determined that "the failure to implement immediate administrative rule changes to better and more clearly define the term 'skill-based amusement machine' to help eliminate illegal gambling machines in Ohio will negatively impact Ohio citizens." Id. at ¶ 9. Accordingly, the governor authorized Dann to immediately implement Ohio Adm.Code 109:4–3–31 regarding skill-based amusement machines. Id. at ¶ 10.

{¶ 6} Pursuant to the governor's executive order, Dann immediately promulgated the new administrative rule, which, among other things, made it a violation of Ohio consumer-protection law to represent that a skill-based amusement machine is legal when it is not. Most notably, the new rule significantly changed the definition of "skill-based amusement machine." Also on August 22, 2007, Dann sent appellants an order to cease and desist from the operation of skill-

based amusement machines at Spinners, charging that their operation constituted a violation of the Consumer Sales Practices Act, R.C. Chapter 1345, under the new administrative rule.

{¶ 7} In response, on September 5, 2007, appellants filed a complaint for declaratory and injunctive relief in the Franklin County Court of Common Pleas. Appellants alleged that Governor Strickland had violated the constitutional doctrine of separation of powers and appellants' right to due process of law, and that Dann promulgated the new administrative rule in violation of the rulemaking authority delegated to him by the General Assembly. The court granted appellants' request for a temporary restraining order.

{¶ 8} Separately, a bill was then pending in the Ohio House of Representatives aimed at amending R.C. 3769.07, an antitrust provision of the Ohio Revised Code.[1] The bill, denominated as Am.Sub.H.B. No. 177, proposed to increase from one to two the number of Ohio horse-racing tracks that one person could own. It had been introduced on April 24, 2007, but no vote had yet been taken on it. On October 10, 2007, with the restraining order still in force and seven weeks after Governor Strickland issued his executive order, the Ohio House of Representatives voted to pass Am.Sub.H.B. No. 177 with amendments proposed that day by Representative Latta. The amendments, inter alia, added an emergency clause to the bill, enacted R.C. 2915.06 and 2915.061, and amended R.C. 2915.01(AAA) using language virtually identical to that used in the administrative rule that Dann had promulgated pursuant to the governor's executive order.

{¶ 9} Following passage by the Ohio Senate, Governor Strickland signed Am.Sub.H.B. No. 177 on October 25, 2007. Thereafter, the Franklin County Court of Common Pleas determined that passage of the bill rendered the issues in the declaratory judgment action moot, and the case was dismissed on February 20, 2008. Appellants closed Spinners to avoid being out of compliance with the law, then reopened after making alterations to the operation of the business. According to Cline, Spinners operates during the pendency of this action but with substantially fewer members and fewer member visits than it had prior to the enactment of Sub.H.B. No. 177.

{¶ 10} On October 31, 2007, appellants filed the present action seeking a judgment declaring that R.C. 2915.01(AAA) and 2915.06 are unconstitutional and may not be enforced. Specifically, appellants alleged that R.C. 2915.01(AAA) and 2915.06 violate the Due Process Clauses of the Ohio and United States Constitutions, that R.C. 2915.01(AAA)(1) violates the Equal Protection Clauses of those constitutions, and that Am.Sub.H.B. No. 177 violates Section 1c, Article II of the

---

1. See 1953 Ohio Atty.Gen.Ops. No. 3362.

Ohio Constitution, in which the right of referendum is reserved to the people, and Section 15, Article II, known as the one-subject rule or single-subject rule.

{¶ 11} The parties filed cross-motions for summary judgment as to all claims. By judgment entry journalized October 30, 2008, the trial court granted appellees' motion for summary judgment and denied appellants' motion for summary judgment. Appellants timely appealed and advance the following assignments of error for our review:

> The trial court erred in granting defendant-appellee's [sic] motion for summary judgment and denying plaintiff-appellants' motion for summary judgment by concluding, as a matter of law, that Ohio Revised Code § 2915.01(AAA) is not void for vagueness in violation of the Due Process Clause[s] of the federal and state constitutions.

> The trial court erred in granting defendant-appellee's [sic] motion for summary judgment and denying plaintiff-appellants' motion for summary judgment by concluding, as a matter of law, that Ohio Revised Code § 2915.06 does not violate the Due Process Clause[s] of the federal and state constitutions.

> The trial court erred in granting defendant-appellee's [sic] motion for summary judgment and denying plaintiff-appellants' motion for summary judgment by concluding, as a matter of law, that Ohio Revised Code § 2915.01(AAA)(1) does not violate the Equal Protection Clauses of the federal and state constitutions.

> The trial court erred in granting defendant-appellee's [sic] motion for summary judgment and denying plaintiff-appellants' motion for summary judgment by concluding, as a matter of law, that Am.Sub.H.B. No. 177 does not violate Article II, § 15(D) of the Constitution of the State of Ohio.

> The trial court erred in granting defendant-appellee's [sic] motion for summary judgment and denying plaintiff-appellants' motion for summary judgment by concluding, as a matter of law, that Am.Sub.H.B. No. 177 does not violate Article II, § 1D of the Constitution of the State of Ohio and does not violate the right reserved to the people for a referendum.

{¶ 12} The trial court disposed of this case by summary judgment. Summary judgment is proper only when the party moving for summary judgment demonstrates (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, when the evidence is construed in a light most favorable to the nonmoving party. Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.* (1997), 78 Ohio St.3d 181, 183, 677 N.E.2d 343. An appellate court's review of summary judgment is de novo. *Koos v. Cent. Ohio Cellular, Inc.* (1994), 94 Ohio App.3d 579, 588, 641 N.E.2d 265.

{¶ 13} "[T]he power and duty of the judiciary to determine the constitutionality, and therefore the validity, of the acts of the other branches of government has been firmly established as an essential feature of the Ohio system of separation of powers. The judiciary is consequently empowered to hear and determine controversies regarding the constitutionality of legislative enactments." (Citation omitted.) *United Auto Workers, Local Union 1112 v. Brunner*, 182 Ohio App.3d 1, 2009-Ohio-1750, 911 N.E.2d 327, ¶ 12.

{¶ 14} "[T]he Ohio Constitution embodies the supreme law of Ohio and reflects the will of the people, who hold the ultimate political power in the state. * * * However, because the Constitution delegates express legislative authority to the General Assembly, a court must not declare a statute unconstitutional unless it appears 'beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible.' " Id. at ¶ 23, quoting *State ex rel. Dickman v. Defenbacher* (1955), 164 Ohio St. 142, 57 O.O. 134, 128 N.E.2d 59, paragraph one of the syllabus.

{¶ 15} We will address appellants' assignments of error out of order for ease of discussion. In their fourth assignment of error, appellants argue that Am.Sub. H.B. No. 177 is unconstitutional because it was enacted in violation of Section 15, Article II of the Ohio Constitution. That rule provides, "No bill shall contain more than one subject, which shall be clearly expressed in its title."

{¶ 16} "Section 15(D) 'exists to prevent the General Assembly from engaging in "logrolling." * * * This practice occurs when legislators combine a disharmonious group of proposals in a single bill so that they may consolidate votes and pass provisions that may not have been acceptable to a majority on their own merits. * * * "The one-subject provision attacks logrolling by disallowing unnatural combinations of provisions in acts, *i.e.*, those dealing with more than one subject, on the theory that the best explanation for the unnatural combination is a tactical one—logrolling." ' [*State ex rel. Dix v. Celeste* (1984), 11 Ohio St.3d 141,] 142–143, 11 OBR 436, 464 N.E.2d 153." *Groch v. Gen. Motors Corp.*, 117 Ohio St.3d 192, 2008-Ohio-546, 883 N.E.2d 377, ¶ 202, quoting *Arbino v. Johnson & Johnson*, 116 Ohio St.3d 468, 2007-Ohio-6948, 880 N.E.2d 420.

{¶ 17} "Ohio's judiciary is reluctant to interfere with the legislative process. The judiciary affords the General Assembly great latitude in enacting comprehensive legislation and indulges every presumption in favor of the constitutionality of legislative enactments. Nevertheless, a court's review of legislation must not be so deferential as to effectively negate the one-subject provision of Section 15(D), Article II of the Ohio Constitution." (Citations omitted.) *Akron Metro. Hous. Auth. Bd. of Trustees v. State*, 10th Dist. No. 07AP–738, 2008-Ohio-2836, 2008 WL 2390802, ¶ 19.

{¶ 18} In *State ex rel. Willke v. Taft*, 107 Ohio St.3d 1, 2005-Ohio-5303, 836 N.E.2d 536, ¶ 35, the Supreme Court of Ohio explained:

[W]e have afforded the General Assembly " 'great latitude in enacting comprehensive legislation by not construing the one-subject provision so as to unnecessarily restrict the scope and operation of laws, or to multiply their number excessively, or to prevent legislation from embracing in one act all matters properly connected with one general subject.' " [*State ex rel.*] *Ohio Civ. Serv. Emp. Assn.* [*AFSCME, Local 11, AFL–CIO v. State Emp. Relations Bd.*], 104 Ohio St.3d 122, 2004-Ohio-6363, 818 N.E.2d 688, ¶ 27, quoting [*State ex rel. Dix v. Celeste* (1984), 11 Ohio St.3d 141,] at 145, 11 OBR 436, 464 N.E.2d 153. Consequently, '[t]he mere fact that a bill embraces more than one topic is not fatal, as long as a common purpose or relationship exists between the topics.' *Hoover v. Franklin Cty. Bd. of Commrs.* (1985), 19 Ohio St.3d 1, 6, 19 OBR 1, 482 N.E.2d 575. And ["t]o conclude that a bill violates the one-subject rule, a court must determine that the bill includes a disunity of subject matter such that there is 'no discernible practical, rational or legitimate reason for combining the provisions in one act.' " *Ohio Civ. Serv. Emp. Assn.*, at ¶ 28, quoting *Beagle v. Walden* (1997), 78 Ohio St.3d 59, 62, 676 N.E.2d 506 (plurality opinion).

{¶ 19} Thus, "the one-subject provision is not directed at plurality but at disunity in subject matter." *State ex rel. Dix v. Celeste* (1984), 11 Ohio St.3d 141, 146, 11 OBR 436, 464 N.E.2d 153. Congruently, "a subject for purposes of the one-subject rule is to be liberally construed as a classification of significant scope and generality. As Black's Law Dictionary (6 Ed.1990) 1425, states, the 'term "subject" within such constitutional provisions is to be given a broad and extensive meaning so as to allow legislature full scope to include in one act all matters having a logical or natural connection.' However, this principle does not extend to give the General Assembly such latitude as to include in one act blatantly unrelated matters." *State ex rel. Ohio Academy of Trial Lawyers v. Sheward* (1999), 86 Ohio St.3d 451, 498, 715 N.E.2d 1062.

{¶ 20} In *In re Nowak*, 104 Ohio St.3d 466, 2004-Ohio-6777, 820 N.E.2d 335, ¶ 54, the Supreme Court of Ohio articulated the test for when a violation of the one-subject rule will require invalidation of the act. The court held, "[A] manifestly gross and fraudulent violation of the one-subject provision contained in Section 15(D), Article II of the Ohio Constitution will cause an enactment to be invalidated."

{¶ 21} The General Assembly stated the purpose of Am.Sub.H.B. No. 177 as follows: "AN ACT To amend sections 2915.01 and 3769.07 and to enact sections 2915.06 and 2915.061 of the Revised Code to allow the same person, association, trust, or corporation to own and operate two separate race tracks in

Ohio, to modify the definition of 'slot machine' and 'skill-based amusement machine' for purposes of the Gambling Law, to create a limit on the redemption value of prizes associated with skill-based amusement machines, and to clarify regulatory authority pertaining to skill-based amusement machines and to declare an emergency."

{¶ 22} Appellants argue that the history of Am.Sub.H.B. No. 177 demonstrates that the General Assembly violated the one-subject rule and that the trial court was wrong to ignore the fact that the bill had been pending for six months prior to the introduction of the amendments to R.C. Chapter 2915 and was passed shortly thereafter. But, as appellees argue in response, "[i]n determining whether a legislative enactment violates Ohio's one-subject rule, a court analyzes the particular language and subject matter of the act, rather than extrinsic evidence of fraud or logrolling." *Akron Metro. Hous. Auth.*, 2008-Ohio-2836, 2008 WL 2390802, at ¶ 19.

{¶ 23} With respect to the language and subject matter of the act, appellants argue that there is blatant disunity between the two chief measures in it—increasing the number of horse-racing tracks that one person can own in Ohio, and changing the definition of skill-based amusement machines so as to bring additional types of machines and uses of machines into the scope of criminal liability for illegal gambling. Appellees argue, and the trial court concluded, that the bill is not a manifestly gross and fraudulent violation of the one-subject rule because the bill as a whole concerns places (racetracks) and devices (skill-based amusement machines) whereby persons engage in gambling.

{¶ 24} Appellants counter that "gambling" is not a subject that legitimately embraces both the issuance of licenses and the criminalizing of certain conduct. Appellees respond by calling our attention to the fact that while licensure and criminal prohibition are different, the one-subject rule is not directed at plurality, but at disunity. *State ex rel. Ohio Civ. Serv. Emps. Assn., AFSCME, Local 11, AFL–CIO v. State Emp. Relations Bd.*, 104 Ohio St.3d 122, 2004-Ohio-6363, 818 N.E.2d 688, ¶ 28. Appellees contend that all provisions of Am.Sub.H.B. No. 177 are directed toward the regulation of gambling and point to several ways in which horse-racing track owners are subject to the gambling laws, and to adverse licensure consequences should they run afoul of non-racing-related criminal gambling laws.

{¶ 25} We agree with appellees. Both R.C. Chapters 3769 and 2915 regulate gambling.[2] The regulation of a particular activity (e.g., liquor, cigarette and

---

2. R.C. Chapter 3769 allows and regulates parimutuel betting at horse racetracks. "Black's Law Dictionary defines 'parimutuel betting' as '[a] system of gambling in which bets placed on a race are pooled and then paid (less a management fee and taxes) to those holding winning

motor-vehicle sales; education; pawn brokering; embalming and funeral direction; boxing promotion; and the practices of nursing, medicine, law, and pharmacy) is frequently accomplished through a diversity of means, including licensure, criminal prohibitions, taxation, reporting requirements, etc.

{¶ 26} In the particular case of horse racing, references to legal gambling represent a benefit to permit holders in certain instances, while prohibitions with respect to gambling are used to restrict permit holders: racetrack permit holders are specifically exempt from the general gambling prohibition of R.C. 2915.02 and the public gaming prohibition of R.C. 2915.04, and are permitted to engage in particular types of regulated gambling activities; permit holders are prohibited from establishing a satellite facility (a facility for parimutuel wagering [3]) if they have been convicted of a gambling offense pursuant to R.C. 3769.26.

{¶ 27} Upon our review of the precise language of Am.Sub.H.B. No. 177 as a whole, and the chapters of the Ohio Revised Code with which the act is concerned, we do not discern a blatant disunity of subject matter such that there is no discernible practical, rational, or legitimate reason for combining the provisions in one act. As such, we agree with the trial court's conclusion that Am.Sub.H.B. No. 177 is not a manifestly gross and fraudulent violation of the one-subject rule.

{¶ 28} For all of the foregoing reasons, appellants' fourth assignment of error is overruled.

{¶ 29} In their second assignment of error, appellants challenge the constitutionality of R.C. 2915.06. That statute provides:

(A) No person shall give to another person any item described in division (BBB)(1), (2), (3), or (4) of section 2915.01 of the Revised Code in exchange for a noncash prize, toy, or novelty received as a reward for playing or operating a skill-based amusement machine or for a free or reduced-price game won on a skill-based amusement machine.

(B) Whoever violates division (A) of this section is guilty of skill-based amusement machine prohibited conduct. A violation of division (A) of this section is a misdemeanor of the first degree for each redemption of a prize that is involved in the violation. If the offender previously has been convicted of a violation of division (A) of this section, a violation of that division is a felony of the fifth degree for each redemption of a prize that is involved in the violation. The

---

tickets.'" *Northfield Park Assocs. v. Ohio State Racing Comm.*, 10th Dist. No. 05AP–749, 2006-Ohio-3446, 2006 WL 1826388, ¶ 2, fn. 1, quoting Black's Law Dictionary (7th Ed.1999).

**3.** R.C. 3769.25(E).

maximum fine authorized to be imposed for a felony of the fifth degree shall be imposed upon the offender.

{¶ 30} Appellants argue that because it imposes strict liability, R.C. 2915.06 is constitutionally infirm in two ways: (1) it is unconstitutionally overbroad because it imposes strict liability upon innocent purchasers engaging in the lawful activity of shopping at garage sales, estate sales, secondhand stores, and the like, where a buyer has no way of knowing whether an item was once awarded as a prize for playing or operating a skill-based amusement machine; and (2) it is unconstitutionally vague on its face, owing to its imposition of strict liability, because it does not allow innocent purchasers to determine whether their conduct is lawful or not.

{¶ 31} "In order to demonstrate facial overbreadth, the party challenging the enactment must show that its potential application reaches a significant amount of protected activity. * * * [C]riminal statutes 'that make unlawful a substantial amount of constitutionally protected conduct may be held facially invalid even if they also have legitimate application.' [*Houston v. Hill* (1987), 482 U.S. 451, 459, 107 S.Ct. 2502, 96 L.Ed.2d 398.] A statute is substantially overbroad if it is 'susceptible of regular application to protected expression. Id. at 467, 107 S.Ct. at 2512, 96 L.Ed.2d at 415.' " *Akron v. Rowland* (1993), 67 Ohio St.3d 374, 387, 618 N.E.2d 138. Appellants argue that R.C. 2915.06 is unconstitutionally overbroad because it contains no specific mens rea requirement, and thus it can be applied to a significant amount of protected activity, i.e., the exercise of the fundamental right to acquire, use, and enjoy property articulated in Article I, Section 1 of the Ohio Constitution ("All men are, by nature, free and independent, and have certain inalienable rights, among which are those of enjoying and defending life and liberty, acquiring, possessing, and protecting property, and seeking and obtaining happiness and safety").

{¶ 32} "In order to prove [that a statute is unconstitutionally void for vagueness], the challenging party must show that the statute is vague 'not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all. * * *' *Coates v. Cincinnati* (1971), 402 U.S. 611, 614, 91 S.Ct. 1686, 1688, 29 L.Ed.2d 214. In other words, the challenger must show that upon examining the statute, an individual of ordinary intelligence would not understand what he is required to do under the law." *State v. Anderson* (1991), 57 Ohio St.3d 168, 171, 566 N.E.2d 1224. " 'It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined.' " *Rowland* at 381, 618 N.E.2d 138, quoting *Grayned v. Rockford* (1972), 408 U.S. 104, 108–109, 92 S.Ct. 2294, 33 L.Ed.2d 222.

{¶ 33} Appellants argue that R.C. 2915.06 is unconstitutionally vague because without the inclusion of a specific culpable mental state, an individual of ordinary intelligence could not reasonably understand what acts it prohibits since the statute does not set forth any unique or readily identifiable traits of a "noncash prize, toy, or novelty received as a reward for playing or operating a skill-based amusement machine" that are capable of recognition by a potential purchaser. Appellants contend that "[a]bsent such identifiable traits, the law is void for vagueness as it is impossible to distinguish between a merchandise prize awarded [for] playing a skill-based amusement machine or any other type of merchandise." Appellants argue that the impermissible vagueness of the language of the statute is revealed in the fact that the legality of an activity cannot be determined solely by the conduct itself (that is, the purchase of the item) but must be determined by factors of which a person may be unaware at the moment when strict liability attaches; that is, at the time of the purchase.

{¶ 34} R.C. 2915.06 does not specify a requisite mens rea. R.C. 2901.21(B) provides, "When the section defining an offense does not specify any degree of culpability, and plainly indicates a purpose to impose strict criminal liability for the conduct described in the section, then culpability is not required for a person to be guilty of the offense. When the section neither specifies culpability nor plainly indicates a purpose to impose strict liability, recklessness is sufficient culpability to commit the offense."

{¶ 35} Under R.C. 2901.21(B), "for strict liability to be the mental standard, the statute must plainly indicate a purpose to impose it." *State v. Lozier*, 101 Ohio St.3d 161, 2004-Ohio-732, 803 N.E.2d 770, ¶ 21. "Thus, in construing R.C. 2901.21(B), [the Supreme Court of Ohio has] repeatedly held that in order to impose strict criminal liability, the statute must clearly show such legislative intent." *State v. Moody*, 104 Ohio St.3d 244, 2004-Ohio-6395, 819 N.E.2d 268, ¶ 6. "It is not enough that the General Assembly in fact intended imposition of liability without proof of mental culpability. Rather the General Assembly must plainly indicate that intention in the language of the statute." *State v. Collins* (2000), 89 Ohio St.3d 524, 530, 733 N.E.2d 1118.

{¶ 36} "The fact that [a] statute contains the phrase 'No person shall' does not mean that it is a strict criminal liability offense. * * * [T]here must be other language in the statute to evidence the General Assembly's intent to impose strict criminal liability." *Moody* at ¶ 16. No such intention is present in the wording of R.C. 2915.06. If we were to interpret it as imposing strict liability, we would be "violating well-settled principles of statutory construction by failing to construe the statute as written." Id. at ¶ 17.

{¶ 37} Because R.C. 2915.06 neither specifies a degree of culpability nor plainly indicates that the General Assembly intended to impose strict liability, pursuant to R.C. 2901.21(B), the requisite mental state for liability under R.C. 2915.06 is recklessness. "A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist." R.C. 2901.22(C).

{¶ 38} Accordingly, to be guilty of skill-based amusement-machine prohibited conduct under R.C. 2915.06, one must give to another person one of the items of consideration enumerated in the statute in exchange for an item, with heedless indifference to the consequences, and with perverse disregard of the known risk that the item for which he is exchanging one of the specified types of consideration is a "noncash prize, toy, or novelty received as a reward for playing or operating a skill-based amusement machine or for a free or reduced-price game won on a skill-based amusement machine."

{¶ 39} With a requisite mental state of recklessness, R.C. 2915.06 is not unconstitutionally vague or overbroad, and appellants do not argue that it is unconstitutional if it includes a specific mental state. Indeed, only those who recklessly violate R.C. 2915.06 will be subject to criminal liability. This means acting in perverse disregard of a known risk that an item is a skill-based amusement-machine prize, which is not protected activity and which is conduct that an individual of ordinary intelligence can reasonably understand is prohibited.

{¶ 40} For all of the foregoing reasons, we hold that R.C. 2915.06 is not facially vague or overbroad and we overrule appellants' second assignment of error on that basis.

{¶ 41} In their first and third assignments of error, appellants challenge the constitutionality of R.C. 2915.01(AAA). The current version of R.C. 2915.01(AAA), as amended by Am.Sub.H.B. No. 177, provides:

(1) "Skill-based amusement machine" means a mechanical, video, digital, or electronic device that rewards the player or players, if at all, only with merchandise prizes or with redeemable vouchers redeemable only for merchandise prizes, provided that with respect to rewards for playing the game all of the following apply:

(a) The wholesale value of a merchandise prize awarded as a result of the single play of a machine does not exceed ten dollars;

(b) Redeemable vouchers awarded for any single play of a machine are not redeemable for a merchandise prize with a wholesale value of more than ten dollars;

(c) Redeemable vouchers are not redeemable for a merchandise prize that has a wholesale value of more than ten dollars times the fewest number of single plays necessary to accrue the redeemable vouchers required to obtain that prize; and

(d) Any redeemable vouchers or merchandise prizes are distributed at the site of the skill-based amusement machine at the time of play.

(2) A device shall not be considered a skill-based amusement machine and shall be considered a slot machine if it pays cash or one or more of the following apply:

(a) The ability of a player to succeed at the game is impacted by the number or ratio of prior wins to prior losses of players playing the game.

(b) Any reward of redeemable vouchers is not based solely on the player achieving the object of the game or the players score;

(c) The outcome of the game, or the value of the redeemable voucher or merchandise prize awarded for winning the game, can be controlled by a source other than any player playing the game.

(d) The success of any player is or may be determined by a chance event that cannot be altered by player actions.

(e) The ability of any player to succeed at the game is determined by game features not visible or known to the player.

(f) The ability of the player to succeed at the game is impacted by the exercise of a skill that no reasonable player could exercise.

{¶ 42} R.C. 2915.01(AAA)(1) defines "skill-based amusement machine" for purposes of R.C. 2915.01(C), which exempts "skill-based amusement machines" from the definition of illegal "schemes of chance," which, in turn, constitute illegal gambling under R.C. 2915.02(A)(2). Thus, if a machine meets the definition of a "skill-based amusement machine," then it is not a criminal offense to establish, promote, operate, or knowingly engage in conduct that facilitates the use of that machine.

{¶ 43} Having set forth the provisions and import of R.C. 2915.01(AAA), we will proceed to consider appellants' third assignment of error. R.C. 2915.01(AAA)(1) makes operation of a skill-based amusement machine lawful where prizes awarded are worth $10 or less but makes operation of the same machine unlawful where the prizes awarded are worth more than $10. Appellants argue that the definition of "skill-based amusement machine" in R.C. 2915.01(AAA)(1) violates the Equal Protection Clauses of the Ohio and United

States Constitutions because there is no rational relation between the value of the prizes awarded and the government interest in differentiating between the lawful use of skill-based amusement machines and unlawful participation in gambling.

{¶ 44} Section 1 of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." In *Nordlinger v. Hahn* (1992), 505 U.S. 1, 10, 112 S.Ct. 2326, 120 L.Ed.2d 1, the United States Supreme Court explained:

> Of course, most laws differentiate in some fashion between classes of persons. The Equal Protection Clause does not forbid classifications. It simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike.

> As a general rule, "legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality." *McGowan v. Maryland,* 366 U.S. 420, 425–426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961). Accordingly, this Court's cases are clear that, unless a classification warrants some form of heightened review because it jeopardizes exercise of a fundamental right or categorizes on the basis of an inherently suspect characteristic, the Equal Protection Clause requires only that the classification rationally further a legitimate state interest.

(Citation omitted.)

{¶ 45} " 'The prohibition against the denial of equal protection of the laws requires that the law shall have an equality of operation on persons according to their relation. So long as the laws are applicable to all persons under like circumstances and do not subject individuals to an arbitrary exercise of power and operate alike upon all persons similarly situated, it suffices the constitutional prohibition against the denial of equal protection of the laws.' " *Conley v. Shearer* (1992), 64 Ohio St.3d 284, 288–289, 595 N.E.2d 862, quoting *Dayton v. Keys* (1969), 21 Ohio Misc. 105, 114, 50 O.O.2d 29, 252 N.E.2d 655. Under the rational-basis test, " 'great deference is paid to the state, the only requirement being to show that the differential treatment is rationally related to some legitimate state interest.' " Id. at 289, 595 N.E.2d 862, quoting *State ex rel. Heller v. Miller* (1980), 61 Ohio St.2d 6, 11, 15 O.O.3d 3, 399 N.E.2d 66. "In general, the Equal Protection Clause is satisfied so long as there is a plausible policy reason for the classification, * * * and the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational." *PICA Corp., Inc. v. Tracy* (1994), 97 Ohio App.3d 42, 46, 646 N.E.2d 206, citing *Nordlinger* at 11, 112 S.Ct. 2326, 120 L.Ed.2d 1. A "statutory distinction does not violate the Equal Protection Clause 'if any state of facts reasonably may be conceived to justify it.' " *Sullivan v. Stroop* (1990), 496 U.S. 478, 485, 110 S.Ct.

2499, 110 L.Ed.2d 438, quoting *Bowen v. Gilliard* (1987), 483 U.S. 587, 601, 107 S.Ct. 3008, 97 L.Ed.2d 485.

{¶ 46} In this case, appellees argue that there is a rational basis for the General Assembly's "legislating against the evils of gambling." Appellees point out that the state even has the power to "prohibit gambling in all forms." *Joseph Bros. v. Brown* (1979), 65 Ohio App.2d 43, 48, 19 O.O.3d 31, 415 N.E.2d 987. With respect to the General Assembly's distinction between skill-based amusement machines that award prizes worth more than $10 and identical machines that award prizes worth $10 or less, appellees argue that "the General Assembly is free to conclude that the gambling instinct is likely to be engaged by high-value prizes, but that the [player's] legitimate goal of amusement is accomplished with prizes under ten dollars wholesale value." They further maintain that the legislature is "permitted 'to draw the line somewhere.'" Id., quoting *FCC v. Beach Communications* (1993), 508 U.S. 307, 316, 113 S.Ct. 2096, 124 L.Ed.2d 211. Under rational-basis review, they contend, "the fact the line might have been drawn differently at some points is a matter for the legislative, rather than judicial, consideration." Id., quoting *Fitzgerald v. Racing Assn.* (2003), 539 U.S. 103, 108, 123 S.Ct. 2156, 156 L.Ed.2d 97.

{¶ 47} In response, appellants argue that while the legislature may indeed "draw the line," that line must further some legislative objective. Appellants contend that the stated objective to ensure that players are playing only for amusement and not pursuant to a "gambling instinct" is not furthered by limiting the value of each prize awarded, in light of the fact that the total value of prizes won by any individual player is increased by the number of times a person plays; the dollar limit for each prize, appellants argue, has no relationship to the state's interest in limiting gambling.

{¶ 48} "In general, the elements of gambling are payment of a price for a chance to gain a prize." *Westerhaus Co. v. Cincinnati* (1956), 165 Ohio St. 327, 59 O.O. 428, 135 N.E.2d 318, paragraph five of the syllabus. Gambling "is 'a scheme for the distribution of prizes by lot or chance.'" *Fisher v. Neusser* (1996), 74 Ohio St.3d 506, 510, 660 N.E.2d 435, quoting *Troy Amusement Co. v. Attenweiler* (1940), 64 Ohio App. 105, 116, 17 O.O. 443, 28 N.E.2d 207. Gambling is distinguished from other enterprises by the element of chance. Id. at 512, 660 N.E.2d 435.

{¶ 49} Indeed, when called upon to determine whether an activity constitutes gambling or nongambling activity, Ohio courts have consistently defined the contours of gambling in terms of the essential elements of price paid, chance, and a prize, without reference to the *amount or value* of the prize. "Amusement has value and added amusement has additional value, and where added amusement is subject to be procured by chance without the payment of additional consideration

therefor, there is involved in the game the elements of gambling, namely, price, chance and a prize." *Stillmaker v. Dept. of Liquor Control* (1969), 18 Ohio St.2d 200, 47 O.O.2d 437, 249 N.E.2d 61, paragraph two of the syllabus.

{¶ 50} "The minimum amount of amusement offered in each play is that which is offered without any return * * *. Whatever amusement is offered through the return of tokens is added amusement which a player has an uncertain chance of receiving. This added amount of amusement, the procurement of which is dependent wholly upon chance, is a thing of value, the lure extended by the device to the player." (Citations omitted.) *Kraus v. Cleveland* (1939), 135 Ohio St. 43, 46–47, 13 O.O. 323, 19 N.E.2d 159.

{¶ 51} The essential ingredient that differentiates merely playing a game for amusement (which can include the added amusement of a prize) and playing a game for amusement that constitutes gambling is whether the outcome is determined in whole or in part by chance. The General Assembly codified that distinction with respect to amusement machines when it made chance-based machines illegal and skill-based machines legal, through enactment of R.C. 2915.01(AAA)(2). However, though the state certainly has a legitimate interest in regulating gambling, we fail to discern how the distinction between machines that reward players with prizes worth over $10 and those that reward players with prizes worth $10 or less is rationally related to the goal of furthering that interest.

{¶ 52} For all of the foregoing reasons, appellants' third assignment of error is sustained.

{¶ 53} In their first assignment of error, appellants present facial-vagueness challenges to R.C. 2915.01(AAA)(1) and (2). Outside of the First Amendment context, a plaintiff may only succeed in a facial challenge to the constitutionality of a statute by " 'establish[ing] that no set of circumstances exists under which the Act would be valid.' " *Washington State Grange v. Washington State Republican Party* (2008), 552 U.S. 442, 449, 128 S.Ct. 1184, 1190, 170 L.Ed.2d 151, quoting *United States v. Salerno* (1987), 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697.

{¶ 54} We begin with appellants' facial-vagueness challenge to R.C. 2915.01(AAA)(1). The statute defines a skill-based amusement machine as one that rewards players, if at all, with merchandise prizes having a wholesale value of $10 or less. Noting that the Ohio Revised Code does not define the term "wholesale value," appellants argue that this statute is unconstitutionally vague on its face because no person of ordinary intelligence would be able to ascertain, upon merely viewing the merchandise prize awarded in any given situation, whether the wholesale value of the prize exceeded $10. Appellants also argue

that the wholesale value of an item could change between the time the game proprietor purchases the prize and the time it awards the prize, making it impossible for the average game proprietor, operator, or member of law enforcement to know whether the prize, and thus the game, violates R.C. 2915.01(AAA)(1). Appellees counter by arguing that the determination of the wholesale value of a prize, in any given instance, may be made by looking at the relevant market.

{¶ 55} We find that our resolution of appellants' third assignment of error renders moot this portion of their first assignment of error because we have already determined that there is no rational relation between the value of prizes awarded for playing a skill-based amusement machine and the legitimate governmental interest in prohibiting unlawful schemes of chance.

{¶ 56} We now turn to appellants' facial-vagueness challenge to R.C. 2915.01(AAA)(2). "The Supreme Court of Ohio has stated that '[w]hen a statute is challenged under the due-process doctrine prohibiting vagueness, the court must determine whether the enactment (1) provides sufficient notice of its proscriptions to facilitate compliance by persons of ordinary intelligence and (2) is specific enough to prevent official arbitrariness or discrimination in its enforcement.'" *Ohio Democratic Party v. Ohio Elections Comm.*, 10th Dist. No. 07AP–876, 2008-Ohio-4256, 2008 WL 3878364, ¶ 22, quoting *Norwood v. Horney*, 110 Ohio St.3d 353, 2006-Ohio-3799, 853 N.E.2d 1115, ¶ 84.

{¶ 57} Due process requires that a statute provide fair warning and prohibits holding an individual criminally liable for conduct that a person of ordinary intelligence would not have reasonably understood to be proscribed. *Grayned*, 408 U.S. at 108, 92 S.Ct. 2294, 33 L.Ed.2d 222. "However, * * * '[i]mpossible standards of specificity are not required. * * * The test is whether the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices.'" *State v. Reeder* (1985), 18 Ohio St.3d 25, 26, 18 OBR 21, 479 N.E.2d 280, quoting *Jordan v. De George* (1951), 341 U.S. 223, 231–232, 71 S.Ct. 703, 95 L.Ed. 886. Therefore, the complainant in a facial-vagueness challenge must prove that the statute is vague "'not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all.'" *Smith v. Goguen* (1974), 415 U.S. 566, 578, 94 S.Ct. 1242, 39 L.Ed.2d 605, quoting *Coates v. Cincinnati* (1971), 402 U.S. 611, 614, 91 S.Ct. 1686, 29 L.Ed.2d 214.

{¶ 58} Appellants maintain that the characteristics enumerated in R.C. 2915.01(AAA)(2) that exclude a machine from the definition of a legal skill-based amusement machine and render it an illegal slot machine cannot be determined

by looking at, or even playing, the machine. As appellees concede, they admitted during discovery that the machine itself would have to be examined in order to determine whether or not the results of play are determined by skill or by chance. For this reason, appellants argue, the statute is impermissibly vague because (1) it is not possible for a game player of ordinary intelligence to understand whether he is prohibited from playing games on a particular machine, and (2) the statute is not specific enough to prevent official arbitrariness or discrimination in its enforcement because it is not possible for law enforcement to know whether or not a particular machine is a legal skill-based amusement machine or an illegal slot machine without first seizing the machine and testing it.

{¶ 59} Appellees initially contend that the language of R.C. 2915.02(A)(2) does not impose criminal liability upon customers who *play* an illegal skill-based amusement machine; it is only directed toward the machine's owners and promoters. We disagree. The statute makes it unlawful for a person to "[e]stablish, promote, or operate or knowingly engage in conduct that facilitates" an illegal scheme of chance. For purposes of R.C. 2915.02(A)(2), "a person facilitates a game of chance conducted for profit or a scheme of chance if the person in any way knowingly aids in the conduct or operation of any such game or scheme, including, without limitation, playing any such game or scheme." R.C. 2915.02(B). This language brings players into the scope of those subject to liability under the statute.

{¶ 60} In order to determine whether R.C. 2915.01(AAA)(2) is vague because it is not specific enough to advise players or proprietors whether their conduct is lawful or not, or to advise law enforcement whether an individual is engaging in unlawful conduct, we must "examine the plain meaning and significance of the words contained in [R.C. 2915.01(AAA)(2) ] to determine whether any standard of conduct is specified therein." *State v. Turner*, 10th Dist. No. 04AP–1166, 2005-Ohio-3143, 2005 WL 1482751, ¶ 9.

{¶ 61} Appellees argue that the statute provides clear standards, and that these standards are made no less clear because one cannot determine merely by looking at or playing a particular machine whether it is unlawful, or because law enforcement might need to inspect and test the machine in order to prove that it meets the criteria in R.C. 2915.01(AAA)(2). Appellees analogize this inquiry to that required in illegal-drug prosecutions, and argue that merely because law enforcement may have to conduct further testing on a machine does not demonstrate that the statute is susceptible of arbitrary and discriminatory enforcement. Appellees argue that in a situation when R.C. 2915.01(AAA)(2) is actually applied to an individual defendant, then that defendant is free to assert all defenses available to him, including that law enforcement lacked probable cause to believe that a machine was illegal prior to its seizure. Appellants' challenge being a

facial challenge and not an as-applied challenge, appellees argue, there is nothing in the language of R.C. 2915.01(AAA)(2) that is unclear on its face as to what is and is not prohibited.

{¶ 62} We agree. "What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is. Thus, [the United States Supreme Court has] struck down statutes that tied criminal culpability to whether the defendant's conduct was 'annoying' or 'indecent' – wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings." *United States v. Williams* (2008), 553 U.S. 285, ——, 128 S.Ct. 1830, 1846, 170 L.Ed.2d 650. There is no such indeterminacy here. R.C. 2915.01(AAA)(2) contains specific standards by which a machine may be determined to be a legal skill-based amusement machine or an illegal slot machine.

{¶ 63} Because appellants have not demonstrated that R.C. 2915.01(AAA)(2) fails in all of its possible applications to advise persons of reasonable intelligence of the standard of conduct being prescribed or what conduct is specifically proscribed, appellants' facial-vagueness challenge to R.C. 2915.01(AAA)(2) is unavailing.

{¶ 64} For all of the foregoing reasons, appellants' first assignment of error is overruled.

{¶ 65} In their fifth assignment of error, appellants argue that Am.Sub. H.B. No. 177 is an unconstitutional violation of Section 1c, Article II of the Ohio Constitution, which reserves to the people of Ohio the right to the referendum. That section provides, "No law passed by the general assembly shall go into effect until ninety days after it shall have been filed by the governor in the office of the secretary of state, except * * * [i]f, however, a referendum petition is filed against any such section or item, the remainder of the law shall not thereby be prevented or delayed from going into effect."

{¶ 66} Section 1d of that article further provides, "[E]mergency laws necessary for the immediate preservation of the public peace, health or safety, shall go into immediate effect. * * * The laws mentioned in this section shall not be subject to the referendum." As noted earlier, the General Assembly declared that an emergency required that Am.Sub.H.B. No. 177 go into immediate effect. Specifically, Section 3 of the bill provides, "This act is hereby declared to be an emergency measure necessary for the immediate preservation of the public peace, health, and safety. The reason for this necessity lies in the fact that a change in the definition of 'skill-based amusement machine' must be made very soon to clarify the legality of the operation of these machines. Therefore, this act shall go into immediate effect."

{¶ 67} Appellants argue that there was no real emergency that required Am.Sub.H.B. No. 177 be put into immediate effect, and that the General Assembly declared an emergency only to deprive the people of Ohio their right to pursue a referendum on the act. On that basis, they seek a declaration that the act is unconstitutional. However, the legislative declaration of an emergency is not subject to judicial review. *State ex rel. Schorr v. Kennedy* (1937), 132 Ohio St. 510, 8 O.O. 494, 9 N.E.2d 278, paragraph two of the syllabus.

{¶ 68} In *Schorr*, the court explained, "[S]ince the people in their Constitution have made the General Assembly the exclusive arbiter of whether a proposed act is in truth an emergency measure upon a dual affirmative vote of at least two-thirds of the elected members, no court has the power or authority to interfere with the judgment so exercised. If the General Assembly abuses its prerogative, the people are not lacking for methods of correction." Id. at 517, 8 O.O. 494, 9 N.E.2d 278. Later, in *Youngstown v. Aiello* (1951), 156 Ohio St. 32, 36, 45 O.O. 45, 100 N.E.2d 62, the Supreme Court of Ohio held, "[W]here a legislative measure, passed either by the General Assembly of the state or by the council of a municipality, is declared to be an emergency measure necessary for the preservation of the public peace, health or safety and sets forth the reasons for the immediate necessity thereof, such determination is not reviewable by the courts, the duty and responsibility of such determination having been confided to the legislative branch of the government." See also *State ex rel. Davis Invest. Co. v. Columbus* (1963), 175 Ohio St. 337, 25 O.O.2d 244, 194 N.E.2d 859.

{¶ 69} In accordance with these authorities, we hold that we have no power to review the General Assembly's declaration of an emergency in its enactment of Am.Sub.H.B. No. 177. On that basis, we overrule appellants' fifth assignment of error.

{¶ 70} In summary, appellants' first assignment of error is overruled as moot with respect to R.C. 2915.01(AAA)(1) and on its merits with respect to R.C. 2915.01(AAA)(2); their second, fourth, and fifth assignments of error are overruled; and their third assignment of error is sustained. The judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part, and this cause is remanded with instructions to enter partial summary judgment in favor of appellants with respect to their claim for a judgment declaring R.C. 2915.01(AAA)(1) violative of the Equal Protection Clauses of the United States and Ohio Constitutions.

Judgment affirmed in part
and reversed in part,
and cause remanded.

BRYANT and BROWN, JJ., concur.