PICKAWAY COUNTY SKILLED GAMING, L.L.C., ET AL., APPELLEES,

*v*. CORDRAY, ATTY. GEN., APPELLANT, ET AL.

[Cite as *Pickaway Cty. Skilled Gaming, L.L.C. v. Cordray*,

127 Ohio St.3d 104, 2010-Ohio-4908.]

*Constitutional law — Equal protection — The prize-value limit set forth in R.C.*
*2915.01(AAA)(1) is rationally related to legitimate government interests*
*and does not violate the Equal Protection Clauses of the United States and*
*Ohio Constitutions.*

(No. 2009-1559 — Submitted June 9, 2010 — Decided October 12, 2010.)

APPEAL from the Court of Appeals for Franklin County, No. 08AP-1032, 183

Ohio App.3d 390, 2009-Ohio-3483.

_____

SYLLABUS OF THE COURT

The prize-value limit set forth in R.C. 2915.01(AAA)(1) is rationally related to
legitimate government interests and does not violate the Equal Protection
Clauses of the United States and Ohio Constitutions.

_____

O'CONNOR, J.

{¶ 1} R.C. 2915.02(A)(2) states that no person shall "[e]stablish,
promote, or operate or knowingly engage in conduct that facilitates * * * any
scheme of chance." R.C. 2915.01(C) defines "scheme of chance"; the subsection
specifically states that a "scheme of chance" does not include a skill-based
amusement machine. These machines range from games (e.g., Skee-ball and
Whac-a-Mole) commonly found at fair and amusement-park midways and in
family fun centers to more sophisticated skill-based games found in the members-

only arcade involved in this case. Although Ohio law permits the operation of skill-based amusement games, R.C. 2915.01(AAA)(1) establishes a $10 prize-value limit for each play on the machines.

{¶ 2} In this appeal, we address whether the $10 limit imposed by R.C. 2915.01(AAA)(1) violates the Equal Protection Clauses of the United States and Ohio Constitutions. Appellant, the attorney general of Ohio, asserts that the limit is rationally related to two legitimate government interests: (1) establishing economic regulations governing the operation of skill-based amusement machines and (2) protecting against criminal acts and enterprises as a prophylactic measure against illegal gambling. Appellees, Pickaway County Skilled Gaming, L.L.C. ("PCSG"), and Steven S. Cline, argue that the prize-value limit set forth in R.C. 2915.01(AAA)(1) serves no purpose other than to define criminal activity and that the prize value is not rationally related to determining whether amusement machines are based on skill or on chance.

{¶ 3} We hold that the prize-value limit is rationally related to legitimate government interests and does not violate the Equal Protection Clauses of the United States and Ohio Constitutions.

## Relevant Background

{¶ 4} Cline owns PCSG. PCSG owns and operates Spinners Skill Stop Games ("Spinners"), a members-only amusement-game arcade located in Circleville, Ohio. The arcade contains 150 skill-based amusement machines for use by its members; the machines have names such as Queen Bee, Fruit Bonus 2004, Mystery J&B 2003, Crazy Bugs, New Cherry, Monkey Land, Rosen' Jack 2003, and Triple Jack 2003.

{¶ 5} R.C. Chapter 2915 prohibits gambling except as otherwise expressly permitted by law. Pursuant to R.C. 2915.02(A)(2), "No person shall * * * [e]stablish, promote, or operate or knowingly engage in conduct that facilitates

any game of chance conducted for profit or any scheme of chance." The definition of "scheme of chance" specifically excludes skill-based amusement machines. R.C. 2915.01(C). R.C. 2915.01(AAA) defines the term "skill-based amusement machine." Pursuant to R.C. 2915.01(AAA)(2), the device may not incorporate any element of chance. The outcome of the game and the value of any prize must be based solely on the player's ability to achieve the object of the game or the player's score. R.C. 2915.01(AAA)(2). Additionally, the wholesale value of any merchandise prize or redeemable voucher awarded as a result of a single play of the machine cannot exceed $10. R.C. 2915.01(AAA)(1). [1]

{¶ 6} Prior to 2004, R.C. Chapter 2915 made no provision for the operation of skill-based amusement machines. In 2003, the legislature amended R.C. Chapter 2915 to exclude skill-based amusement machines from the definition of "schemes of chance." Am.Sub.H.B. No. 95, 150 Ohio Laws, Part I, 396, 865. Under that law, a "skill-based amusement machine" required the player's active participation and the outcome of the game could not be determined "largely or wholly by chance" or "by a person not actively participating in the game." Am.Sub.H.B. No. 95, 150 Ohio Laws, Part I, at 875.

{¶ 7} On August 22, 2007, Ohio Governor Ted Strickland issued Executive Order 2007-28S in response to a documented "increase in the number of illegal gambling machines around the State of Ohio." Executive Order 2007-28S, ¶ 1 (accessed at the website of Governor Strickland at http://www.governor.ohio.gov). The governor noted that "[b]ecause of the imprecision of the statutory term 'skill-based amusement machines' and because components of illegal gambling machines have been continually altered to make

---

1. Pursuant to R.C. 2915.01(BBB), which is not at issue in this appeal, the merchandise prizes that may be awarded for playing skill-based amusement machines cannot include cash or gift cards; plays on games of chance, state lottery tickets, bingo, or instant bingo; firearms, tobacco, or alcoholic beverages; or vouchers redeemable for any of the prohibited items.

them appear to be legal skill-based amusement games when they are not, the State has thus far been unsuccessful in effectively limiting the proliferation of illegal gambling machines masquerading as skill-based amusement machines." Id., ¶ 3. He also stated that "[t]he effects of illegal gambling machines are devastating, not only to the consumers who may spend excessive amounts of their financial resources to play these games in hopes of receiving a large pay-out, but also to the Ohio communities in which these machines are located that are experiencing an increase in other criminal and illegal activities due to the proliferation of these machines." Id., ¶ 4.

{¶ 8} Through the Executive Order, Governor Strickland declared an emergency justifying suspension of the normal rulemaking process and authorized the attorney general to immediately adopt former Ohio Adm.Code 109:4-3-31. Executive Order 2007-28S at ¶ 9-10. The attorney general adopted the new administrative rule, which, among other things, significantly changed the definition of "skill-based amusement machine." The rule made it an unfair and deceptive act to misrepresent that a game was skill-based if it did not meet the requirements of the rule. Former Ohio Adm.Code 109:4-3-31(B), 2007-2008 Ohio Monthly Record, 2-233-2-235. The rule specified that the value of prizes and redeemable vouchers for any single play of a skill-based amusement machine could not exceed $10. Former Ohio Adm.Code 109:4-3-31(D)(1)(a)(ii) through (iv). Also, skill-based amusement machines could not award cash prizes or gift cards; plays on games of chance, state lottery tickets, bingo, or instant bingo; firearms, tobacco, or alcoholic beverages; or vouchers redeemable for any of the prohibited prizes. Former Ohio Adm.Code 109:4-3-31(D)(3)(a) through (d).

{¶ 9} Under the authority of the new administrative rule, on August 22, 2007, the attorney general ordered PCSG and Cline to cease and desist all operations at Spinners, charging that they had violated the Consumer Sales

4

Practices Act, R.C. Chapter 1345, by representing that their games were legal skill-based amusement machines when, because they awarded cash payouts, the machines did not meet the definition set forth in the new rule. PCSG and Cline filed a complaint against the attorney general seeking declaratory and injunctive relief. The trial court granted PCSG and Cline's request for a temporary restraining order and Spinners reopened.

{¶ 10} While PCSG and Cline's action was pending, the Franklin County Court of Common Pleas found in a similar action that Ohio Adm.Code 109:4-3-31 exceeded the attorney general's rule-making authority. On October 10, 2007, the Ohio House of Representatives passed Sub.H.B. No. 177, which, among other provisions, amended R.C. 2915.01(AAA). The bill incorporated into the statute much of the language defining "skill-based amusement machines" that had been set forth in Ohio Adm.Code 109:4-3-31, including the $10 prize-value limit. The Ohio Senate passed Sub.H.B. No. 177, Governor Strickland signed it, and it became effective immediately, on October 25, 2007. Thereafter, the Franklin County Court of Common Pleas determined that passage of Sub.H.B. No. 177 rendered the issues in the declaratory-judgment action moot and dismissed PCSG and Cline's complaint.

{¶ 11} In anticipation of the passage of Sub.H.B. No. 177, PCSG and Cline temporarily closed Spinners to avoid violating the new law, but they reopened the business after altering its operations. Spinners continues to operate, but with substantially fewer members and fewer visits than it had prior to the enactment of Sub.H.B. No. 177.

{¶ 12} On October 31, 2007, PCSG and Cline filed the present action against the attorney general[2] seeking a judgment declaring R.C. 2915.01(AAA)

---

2. PCSG and Cline initially filed their complaint against Director of the Ohio Department of Public Safety Henry Guzman, Pickaway County Sheriff Dwight E. Radcliff, and Pickaway County

unconstitutional and an injunction prohibiting the enforcement of the provisions of Sub.H.B. No. 177. PCSG and Cline moved for summary judgment, arguing that R.C. 2915.01(AAA)(1) violated the Equal Protection Clauses of the United States and Ohio Constitutions. The attorney general filed a cross-motion for summary judgment. The trial court reviewed state and federal equal-protection caselaw and concluded that R.C. 2915.01(AAA)(1) did not violate the Equal Protection Clauses of the state and federal constitutions. The trial court held that the prize-value limit is not rationally related to whether a machine is "skill-based." However, the trial court concluded that the limit is rationally related to determining whether a machine is for the purpose of amusement. The court stated that the legislature could reasonably conclude that high-value prizes are more closely associated with gambling, while low-value prizes are less likely to be connected with gambling and are consistent with playing for amusement. Accordingly, the trial court denied PCSG and Cline's motion for summary judgment and granted summary judgment in favor of the attorney general.

{¶ 13} PCSG and Cline appealed the trial court's judgment to the Tenth District Court of Appeals, which held that the prize-value limit set forth in R.C. 2915.01(AAA)(1) violated the state and federal Equal Protection Clauses. *Pickaway Cty. Skilled Gaming, L.L.C. v. Cordray*, 183 Ohio App.3d 390, 2009-Ohio-3483, 917 N.E.2d 305, ¶ 52. The court focused its analysis on the definition of gambling, noting that "Ohio courts have consistently defined the contours of gambling in terms of the essential elements of price paid, chance, and a prize, without reference to the *amount or value* of the prize." (Emphasis sic.) Id., ¶ 49, citing *Stillmaker v. Dept. of Liquor Control* (1969), 18 Ohio St.2d 200, 47 O.O.2d 437, 249 N.E.2d 61, paragraph two of the syllabus. "The essential ingredient that

Prosecuting Attorney Judy Wolford, but subsequently dismissed their claims against these defendants.

differentiates merely playing a game for amusement (which can include the added amusement of a prize) and playing a game for amusement that constitutes gambling is whether the outcome is determined in whole or in part by chance." Id., ¶ 51. The court noted that the legislature codified the distinction when it made chance-based machines illegal and skill-based machines legal in R.C. Chapter 2915. Accordingly, the Tenth District held that the distinction between machines that award prizes worth more than $10 and those that do not is not rationally related to the legislature's goal of distinguishing between illegal chance-based and legal skill-based amusement machines. Id.

{¶ 14} In light of its holding that R.C. 2915.01(AAA)(1) violated the state and federal Equal Protection Clauses, the court of appeals held that PCSG and Cline's challenge to R.C. 2915.01(AAA)(1) on the ground that the statute was vague on its face was moot and did not reach the merits of that argument. Id., ¶ 55.

{¶ 15} PCSG and Cline filed notice of a discretionary appeal from the Tenth District's judgment, and the attorney general filed a cross-appeal. We accepted jurisdiction over the attorney general's second proposition on cross-appeal to determine whether the prize-value limit in R.C. 2915.01(AAA)(1) violates the Equal Protection Clauses of the United States and Ohio Constitutions. *Pickaway Cty. Skilled Gaming, L.L.C. v. Cordray*, 123 Ohio St.3d 1506, 2009-Ohio-6210, 917 N.E.2d 810. We hold that it does not.

**Analysis**

*The Equal Protection Clauses*

{¶ 16} The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides, "No State shall * * * deny to any person within its jurisdiction the equal protection of the laws." Ohio's Equal Protection Clause, Section 2, Article I of the Ohio Constitution, states, "All political power is

inherent in the people. Government is instituted for their equal protection and benefit * * *." " 'The Equal Protection Clause[s] [do] not forbid classifications. [They] simply keep[] governmental decisionmakers from treating differently persons who are in all relevant respects alike.' " *Burnett v. Motorists Mut. Ins. Co.*, 118 Ohio St.3d 493, 2008-Ohio-2751, 890 N.E.2d 307, ¶ 30, quoting *Nordlinger v. Hahn* (1992), 505 U.S. 1, 10, 112 S.Ct. 2326, 120 L.Ed.2d 1.

{¶ 17} The federal and Ohio equal-protection provisions are "functionally equivalent," *State v. Williams*, 126 Ohio St.3d 65, 2010-Ohio-2453, 930 N.E.2d 770, ¶ 38, citing *Eppley v. Tri-Valley Local School Dist. Bd. of Edn.*, 122 Ohio St.3d 56, 2009-Ohio-1970, 908 N.E.2d 401, ¶ 11, and *State v. Thompson*, 95 Ohio St.3d 264, 2002-Ohio-2124, 767 N.E.2d 251, ¶ 11, and "are to be construed and analyzed identically," *Am. Assn. of Univ. Professors, Cent. State Univ. Chapter v. Cent. State Univ.* (1999), 87 Ohio St.3d 55, 60, 717 N.E.2d 286.

{¶ 18} Courts apply varying levels of scrutiny to equal-protection challenges depending on the rights at issue and the purportedly discriminatory classifications created by the law. "[A] statute that does not implicate a fundamental right or a suspect classification does not violate equal-protection principles if it is rationally related to a legitimate government interest." *Williams*, 126 Ohio St.3d 65, 2010-Ohio-2453, 930 N.E.2d 770, ¶ 39, citing *Eppley*, 122 Ohio St.3d 56, 2009-Ohio-1970, 908 N.E.2d 401, ¶ 15. The parties do not dispute that this case does not involve a fundamental right or suspect classification[3] and that rational-basis review applies.

---

3. The classification created by R.C. 2915.01(AAA) purportedly discriminates between operators of skill-based amusement machines who award prizes valued over $10 per play and operators who award prizes worth less than $10. PCSG and Cline argue that R.C. 2915.01(AAA) also creates a discriminatory classification between players of skill-based amusement machines who receive prizes valued over $10 per play and players who receive prizes worth less than $10. However, the party challenging the constitutionality of a statute must be a member of the group that is the victim of the discriminatory classification. *Columbia Gas Transm. Corp. v. Levin*, 117 Ohio St.3d 122, 2008-Ohio-511, 882 N.E.2d 400, ¶ 99. Accord *State ex rel Harrell v. Streetsboro City School*

**{¶ 19}** "The rational-basis test involves a two-step analysis. We must first identify a valid state interest. Second, we must determine whether the method or means by which the state has chosen to advance that interest is rational." *McCrone v. Bank One Corp.*, 107 Ohio St.3d 272, 2005-Ohio-6505, 839 N.E.2d 1, ¶ 9, citing *Buchman v. Wayne Trace Local School Dist. Bd. of Edn.* (1995), 73 Ohio St.3d 260, 267, 652 N.E.2d 952.

**{¶ 20}** "Under the rational-basis standard, a state has no obligation to produce evidence to sustain the rationality of a statutory classification." *Columbia Gas Transm. Corp. v. Levin*, 117 Ohio St.3d 122, 2008-Ohio-511, 882 N.E.2d 400, ¶ 91, citing *Am. Assn. of Univ. Professors, Cent. State Univ. Chapter,* 87 Ohio St.3d at 58, 60, 717 N.E.2d 286. "[S]tatutes are presumed to be constitutional and * * * courts have a duty to liberally construe statutes in order to save them from constitutional infirmities." *Eppley*, 122 Ohio St.3d 56, 2009-Ohio-1970, 908 N.E.2d 401, ¶ 12, citing *Desenco, Inc. v. Akron* (1999), 84 Ohio St.3d 535, 538, 706 N.E.2d 323. The party challenging the constitutionality of a statute "bears the burden to negate every conceivable basis that might support the legislation." *Columbia Gas Transm. Corp.* at ¶ 91, citing *Lyons v. Limbach* (1988), 40 Ohio St.3d 92, 94, 532 N.E.2d 106.

*The Prize-Value Limit Serves Legitimate Government Interests*

**{¶ 21}** R.C. 2915.02(A)(2) prohibits the operation of "any game of chance conducted for profit or any scheme of chance." Pursuant to R.C. 2915.01(C), skill-based amusement machines are excluded from the definition of a "scheme of chance." R.C. 2915.01(AAA) defines "skill-based amusement machines." Thus,

---

*Dist. Bd. of Edn.* (1989), 46 Ohio St.3d 55, 63, 544 N.E.2d 924 ("Since Streetsboro is not a member of the class it identifies, it lacks standing to attack the statute's constitutionality on the ground that it violates others' rights to equal protection"). Neither PCSG nor Cline claims to be a member of a player-based classification and therefore neither PCSG nor Cline has standing to challenge the constitutionality of R.C. 2915.01(AAA) on behalf of the players of the machines. Our analysis is limited to the owner-based classification.

it is clear that one purpose of R.C. 2915.01(AAA) is to differentiate between machines that are legal games of skill and those that constitute illegal games of chance.

{¶ 22} The Tenth District seized on this purpose in holding that the prize-value limit set forth in R.C. 2915.01(AAA)(1) violates the Equal Protection Clauses. The appellate court reasoned that "[t]he essential ingredient that differentiates merely playing a game for amusement (which can include the added amusement of a prize) and playing a game for amusement that constitutes gambling is whether the outcome is determined in whole or in part by chance." *Pickaway Cty. Skilled Gaming, L.L.C.*, 183 Ohio App.3d 390, 2009-Ohio-3483, 917 N.E.2d 305, ¶ 51. The court held that the prize-value limit was not rationally related to the statute's purpose of distinguishing illegal chance-based games from legal skill-based amusement machines.

{¶ 23} PCSG and Cline urge us to reach the same conclusion, arguing that the prize-value limit serves no purpose other than to define criminal activity. However, the Tenth District, PCSG, and Cline fail to recognize that " 'not every provision in a law must share a single objective.' " *Park Corp. v. Brook Park*, 102 Ohio St.3d 166, 2004-Ohio-2237, 807 N.E.2d 913, ¶ 27, quoting *Fitzgerald v. Racing Assn. of Cent. Iowa* (2003), 539 U.S. 103, 109, 123 S.Ct. 2156, 156 L.Ed.2d 97. Rather, "a statute can meet its proclaimed purpose while at the same time balancing other objectives." Id., ¶ 30.

{¶ 24} In *Park Corp.*, Brook Park imposed different taxes upon parking fees charged by an exhibition center and fees charged by airport parking lots. The exhibition center argued that taxing its parking fees at a higher rate than the airport parking fees was not rationally related to the government's interest in collecting revenue from parking facilities. Id., ¶ 29. This court noted that although the city primarily imposed the taxes to create a new revenue stream, the

city may have had additional objectives in imposing a lower tax rate on airport parking fees, such as ensuring continued viability of the airport lots or seeking to aid the development of the part of the city that included the airport lots.  Id., ¶ 30-33.

{¶ 25} In *Fitzgerald*, the United States Supreme Court held that an Iowa statute that imposed different taxes on revenue from slot machines at racetracks and on revenue from slot machines on riverboats did not violate the Equal-Protection Clause.  The court noted that the riverboat tax could have served multiple objectives in addition to raising tax revenue — for example, encouraging the economic development of river communities or providing incentives for riverboats to stay in the state rather than relocate to other states.  539 U.S. 103, 109, 123 S.Ct. 2156, 156 L.Ed.2d 97.  The court stated that "[o]nce one realizes that not every provision in a law must share a single objective, one has no difficulty finding the necessary rational support for [the different tax rates."].

{¶ 26} The fact that one purpose of R.C. 2915.01(AAA) is to define "skill-based amusement machines" for the purpose of identifying what gambling is illegal does not negate the possibility that the prize-value limit set forth in R.C. 2915.01(AAA)(1) may simultaneously serve other valid government interests.  Indeed, the attorney general identifies two legitimate government interests that the prize-value limit purportedly serves.

{¶ 27} First, the attorney general argues that the prize-value limit serves as an economic regulation of skill-based amusement machines.  The state plainly has a legitimate interest in regulating its local economies.  See *New Orleans v. Dukes* (1976), 427 U.S. 297, 303, 96 S.Ct. 2513, 49 L.Ed.2d 511.  The operation of skill-based amusement machines is a valid statewide industry in Ohio, and the state has a legitimate interest in establishing economic regulations for the industry, including regulating the prizes that may be awarded.

**{¶ 28}** Second, the attorney general contends that the prize-value limit protects against criminal acts and enterprises by acting as a prophylactic measure against illegal chance-based gambling. Courts have long recognized that state legislatures have a legitimate interest in regulating gambling. "The suppression of gambling is concededly within the police powers of a State, and legislation prohibiting it, or acts which may tend to facilitate it, will not be interfered with by the court unless such legislation be a 'clear, unmistakable infringement of rights secured by the fundamental law.' " *Ah Sin v. Wittman* (1905), 198 U.S. 500, 505-506, 25 S.Ct. 756, 49 L.Ed. 1142, quoting *Booth v. Illinois* (1902), 184 U.S. 425, 429, 22 S.Ct. 425, 46 L.Ed. 623. See also *State v. Posey* (1988), 40 Ohio St.3d 420, 426, 534 N.E.2d 61 (noting that the state has a legitimate interest in regulating gambling and in permitting certain gambling activities for charitable purposes).

**{¶ 29}** Accordingly, the prize-value limit set forth in R.C. 2915.01(AAA)(1) satisfies the first prong of the rational-basis analysis. It serves two vital and valid government interests: economic regulation and protection against criminal acts and enterprises.

*The Prize-Value Limit Is Rationally Related to the Government Interests*

**{¶ 30}** Having determined that R.C. 2915.01(AAA)(1) serves valid government interests, we turn to whether the prize-value limit is rationally related to those interests.

**{¶ 31}** "Legislative enactments that do not involve a suspect classification are 'presumptively rationally related to legitimate social and economic goals, unless the "varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the legislature's actions were irrational." ' " *McCrone*, 107 Ohio St.3d 272, 2005-Ohio-6505, 839 N.E.2d 1, at ¶ 30, quoting *State ex rel. Doersam v. Indus.*

*Comm.* (1988), 40 Ohio St.3d 201, 203, 533 N.E.2d 321, quoting *Vance v. Bradley* (1979), 440 U.S. 93, 97, 99 S.Ct. 939, 59 L.Ed.2d 171.  In other words, "[a] statute will not be held to violate the Equal Protection Clause, and this court will not invalidate a plan of classification adopted by the General Assembly, unless it is clearly arbitrary and unreasonable." Id., ¶ 9.

{¶ 32} "Ohio courts grant substantial deference to the legislature when conducting an equal-protection rational-basis review." *Williams*, 126 Ohio St.3d 65, 2010-Ohio-2453, 930 N.E.2d 770, ¶ 40, citing *State v. Williams* (2000), 88 Ohio St.3d 513, 531, 728 N.E.2d 342.  " '[A] legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data.' " *Am. Assn. of Univ. Professors, Cent. State Univ. Chapter,* 87 Ohio St.3d 55, 58, 717 N.E.2d 286, quoting *Fed. Communications Comm. v. Beach Communications, Inc.* (1993), 508 U.S. 307, 315, 113 S.Ct. 2096, 124 L.Ed.2d 211.  "Furthermore, 'courts are compelled under rational-basis review to accept a legislature's generalizations even when there is an imperfect fit between means and ends.  A classification does not fail rational-basis review because "it is not made with mathematical nicety or because in practice it results in some inequality." ' " Id., quoting *Heller v. Doe* (1993), 509 U.S. 312, 321, 113 S.Ct. 2637, 125 L.Ed.2d 257, quoting *Lindsley v. Natural Carbonic Gas Co.* (1911), 220 U.S. 61, 78, 31 S.Ct. 337, 55 L.Ed. 369.  "[O]ur role is not to cross-check the General Assembly's findings to ensure that we would agree with its conclusions." *Eppley*, 122 Ohio St.3d 56, 2009-Ohio-1970, 908 N.E.2d 401, ¶ 17, citing *Arbino v. Johnson & Johnson*, 116 Ohio St.3d 468, 2007-Ohio-6948, 880 N.E.2d 420, ¶ 58.

{¶ 33} Applying this highly deferential standard, as we must, we hold that the $10 prize-value limit is rationally related to the state's legitimate interests in

regulating its economies and in preventing criminal acts and enterprises as a prophylactic measure against illegal chance-based gambling.

{¶ 34} The analysis would not be complete without addressing the position put forth by the Ohio Coin Machine Association ("OCMA") in their amicus curiae brief. OCMA argues that decisions by three other state supreme courts are instructive because each held that laws related to coin-operated games of skill violated state and federal equal-protection clauses. *Ragland v. Forsythe* (1984), 282 Ark. 43, 666 S.W.2d 680; *State v. Bloss* (1980), 62 Haw. 147, 613 P.2d 354; *Cossack v. Los Angeles* (1974), 11 Cal.3d 726, 114 Cal.Rptr. 460, 523 P.2d 260.

{¶ 35} In *Bloss*, the Supreme Court of Hawai'i held that a law that prohibited minors from playing or loitering near pinball machines violated the state and federal Equal Protection Clauses. 62 Haw. at 157-158, 613 P.2d 354. The court held that the law was not rationally related to the legislative purposes of (1) protecting young people from harmful influences or (2) preventing young people from spending their lunch money on coin-operated amusement devices. Id. at 156-157. *Bloss* involved an antiquated law that had been written when pinball machines did not have flippers and were games of chance, not skill, and before electronic videoscreen amusement games existed. Although singling out pinball machines may have served a legitimate interest when the law was enacted, the Hawai'i court held that, particularly in light of the development of electronic video games that were not prohibited under the law, it no longer served such an interest and, therefore, it had no reasonable relationship to the harm that it sought to avoid. Id. at 157. In contrast to *Bloss*, R.C. 2915.01(AAA)(1) does not differentiate between types of skill-based amusement machines; the prize-value limit applies to all games of skill. Further, *Bloss* did not involve a classification based on the value of prizes awarded by the machines. Therefore, although it

addresses the constitutionality of skill-based amusement machines, *Bloss* does not address the issue before this court.

**{¶ 36}** The same is true of *Cossack*, in which the Supreme Court of California considered the constitutionality of an ordinance that prohibited the operation of certain types of gaming machines. The plaintiffs sought to operate games of skill that fit within the technical definition of the games that had been prohibited by the ordinance. However, the court concluded that because the ordinance was enacted when the machines in question were games of chance, it was intended to prohibit only games of chance. 11 Cal.3d at 734, 114 Cal.Rptr. 460, 523 P.2d 260. Because the machines had evolved into games of skill, the court held that the ordinance was not intended to prohibit their operation. Id. However, the court stated that if the ordinance was intended to prohibit games of skill, it would violate the state and federal Equal Protection Clauses because it would result in an arbitrary distinction between the prohibited games of skill and other permissible games of skill. Id. As with *Bloss*, this case does not address the value of prizes awarded for playing the machines and does not reach the issue before this court.

**{¶ 37}** Lastly, *Ragland* did not involve regulation of skill-based games and is, therefore, not instructive. In *Ragland*, the Arkansas Supreme Court held that a law that allowed only Arkansas residents to own coin-operated amusement machines had no rational relationship to a valid state interest. 282 Ark. at 46, 666 S.W.2d 680.

**{¶ 38}** The cases cited by OCMA are inapposite. They do not relate to the prize-value issue in this case. Therefore, we turn to whether the prize-value limit set forth in R.C. 2915.01(AAA)(1) is rationally related to the legitimate interests that the attorney general has established in this case. We hold that it is.

15

{¶ 39} First, the $10 prize-value limit set forth in R.C. 2915.01(AAA)(1) is a regulation that is part of the state's scheme to protect its local economies. The statute is calculated to further the state's interest by eliminating the lure of big prizes and thus minimizing irresponsible play while providing a legal safe harbor for harmless games (e.g., Skee-ball) that award token prizes.

{¶ 40} PCSG, Cline, and OCMA argue that the $10 prize-value limit is not rationally related to the state's interest, because it does not eliminate the lure of big prizes. Because the limit is based on each play, and R.C. 2915.01(AAA)(1) does not limit the number of times an individual can play a skill-based amusement machine, PCSG, Cline, and OCMA argue that players can amass endless vouchers and redeem them for valuable prizes. OCMA also argues that the prize-value limit does not eliminate the possibility of individuals becoming addicted to playing skill-based amusement machines.

{¶ 41} "[I]n the local economic sphere, it is only the invidious discrimination, the wholly arbitrary act, which cannot stand consistently with the Fourteenth Amendment." *Dukes*, 427 U.S. at 303-304, 96 S.Ct. 2513, 49 L.Ed.2d 511, citing *Ferguson v. Skrupa* (1963), 372 U.S. 726, 732, 83 S.Ct. 1028, 10 L.Ed.2d 93. " 'A legislative body may direct its legislation against any evil as it actually exists, without covering the whole field of possible abuses, and it may do so none the less that the forbidden act does not differ in kind from those that are not forbidden.' " *Benjamin v. Columbus* (1957), 167 Ohio St. 103, 117, 4 O.O.2d 113, 146 N.E.2d 854, quoting *Xenia v. Schmidt* (1920), 101 Ohio St. 437, 130 N.E. 24, paragraph nine of the syllabus. " 'The "task of classifying persons for * * * benefits * * * inevitably requires that some persons who have an almost equally strong claim to favored treatment be placed on different sides of the line," and the fact the line might have been drawn differently at some points is a matter for legislative, rather than judicial consideration.' " *Fitzgerald*, 539 U.S. at 108,

123 S.Ct. 2156, 156 L.Ed.2d 97, quoting *United States RR. Retirement Bd. v. Fritz* (1980), 449 U.S. 166, 179, 101 S.Ct. 453, 66 L.Ed.2d 368, quoting *Mathews v. Diaz* (1976), 426 U.S. 67, 83, 96 S.Ct. 1883, 48 L.Ed.2d 478.

{¶ 42} PCSG and Cline have the burden to negate every conceivable basis that might support the prize-value limit set forth in R.C. 2915.01(AAA)(1). *Heller v. Doe* (1993), 509 U.S. 312, 320, 113 S.Ct. 2637, 125 L.Ed.2d 257. PCSG and Cline have failed to meet their burden to establish that the prize-value limit is arbitrary and invidious.

{¶ 43} We agree with PCSG, Cline, and OCMA that the prize-value limit does not eliminate every possibility that individuals might play skill-based amusement machines in order to accumulate vouchers and redeem them for large prizes or that individuals may become addicted to such games. However, it need not do so in order to pass rational-basis review. The prize-value limit eliminates the possibility that an individual might receive a large prize after a few plays on a skill-based amusement machine. Because of the limit, individuals must play these games many times in order to accumulate enough vouchers to obtain valuable prizes — and the more valuable the prizes, the more times individuals must play the games. Moreover, based on the $10 limit and the value of the prize they want, players can estimate the minimum number of plays that will be necessary to accumulate enough redeemable vouchers to obtain the prize. Therefore, the prize-value limit may dissuade players from spending excessive amounts of money playing skill-based amusement machines hoping to win an expensive prize. The limit is not so unrelated to the state's interest in establishing economic regulations governing the operation of skill-based amusement machines as to render it arbitrary or invidious.

{¶ 44} OCMA also contends that the prize-value limit is not rationally related to a state interest because the General Assembly simply "rubberstamped

the ten-dollar figure which was apparently pulled out of thin air by the Governor and/or Attorney General." [4]  As explained above, in enacting the prize-value limit, the legislature sought to eliminate the lure of big prizes and to prevent individuals from overspending when playing skill-based amusement machines.  In doing so, the legislature selected a nominal prize-value limit that was reasonably calculated to achieve this purpose.  A legislative enactment may be based on rational speculation and need not be supported by evidence or empirical data.  *Am. Assn. of Univ. Professors, Cent. State Univ. Chapter*, 87 Ohio St.3d at 58, 717 N.E.2d 286.  Accordingly, although the attorney general does not explain why the legislature chose the $10 figure as opposed to a different prize value, the $10 limit is rationally related to the government's interest in eliminating the lure of expensive prizes and protecting the public from overspending while playing skill-based amusement machines.

{¶ 45} The prize-value limit is also rationally related to the government's interest in preventing criminal acts and enterprises by acting as a prophylactic measure against illegal, chance-based gambling.  "The suppression of gambling is concededly within the police powers of a state, and legislation prohibiting it, or acts which may tend to facilitate it, will not be interfered with by the court unless such legislation be a 'clear, unmistakable infringement of rights secured by the fundamental law.' "  *Ah Sin*, 198 U.S. at 505-506, 25 S.Ct. 756, 49 L.Ed. 1142, quoting *Booth v. Illinois* (1902), 184 U.S. 425, 429, 22 S.Ct. 425, 46 L.Ed.623.

---

4.  OCMA also argues that the $10 limit is bad for Ohio business because it bears no rational relationship to the rate of return a game of skill must yield in order to allow its operator to (1) recoup the capital investment it has made in the game and (2) to afford to satisfy players' demand for the next generation of games.  OCMA argues that the limit will stifle economic activity by eliminating the high-end game-of-skill industry in Ohio and by forcing players to look outside Ohio for challenging state-of-the-art games of skill.  OCMA's argument is a policy consideration for the legislature; not an issue for this court.  We will not substitute our judgment for that of the legislature.  *Eppley*, 122 Ohio St.3d 56, 2009-Ohio-1970, 908 N.E.2d 401, ¶ 17.

{¶ 46} PCSG and Cline again do not meet their burden of negating any possible rational relationship between the prize-value limit and the government's interest in suppressing illegal chance-based gambling. Motivated by financial gain, operators of illegal chance-based amusement machines can easily alter games of chance to appear to be games of skill. Financial motivation may come from charging more to play illegal games of chance or from individuals who overspend in hopes of winning big prizes. As we explained above, the $10 prize-value limit is designed to eliminate the latter motivation. Furthermore, it stands to reason that players will not pay the same fee to play games that award a $10 prize as they would to play games that offer higher value prizes. By limiting the potential prizes awarded by skill-based amusement machines, R.C. 2915.01(AAA)(1) effectively limits the fee that operators can charge to play the games. Thus, the prize-value limit effectively removes the financial incentive for operators to disguise illegal chance-based machines as skill-based games.

{¶ 47} OCMA argues that because chance-based machines are banned by the statute, except under certain conditions, any prophylactic benefit served by the prize-value limit in preventing operators from altering games of skill to include elements of chance is superfluous and overstated. However, as far back as 1939, this court acknowledged that "[e]ven if the slot machine * * * is manufactured and intended for lawful operation, its potentiality and design is such that it may be easily put to unlawful use. The regulation or prohibition of such a mechanism need not be postponed until such event occurs." *Kraus v. Cleveland* (1939), 135 Ohio St. 43, 47, 13 O.O. 323, 19 N.E.2d 159.

{¶ 48} The same is true of skill-based amusement machines. In issuing Executive Order 2007-28S, Governor Strickland recognized that chance-based machines can be altered easily to make them appear to be skill-based amusement machines and that the state has been unsuccessful in limiting the proliferation of

illegal gambling machines masquerading as skill-based amusement machines. Executive Order 2007-28S at ¶ 3. Because the prize-value limit set forth in R.C. 2915.01(AAA)(1) effectively removes the financial incentive for operators to disguise illegal chance-based machines as skill-based amusement machines, it is not so unrelated to the state's legitimate interest in preventing criminal acts and enterprises as to render it arbitrary or invidious.

### Conclusion

**{¶ 49}** We hold that the prize-value limit set forth in R.C. 2915.01(AAA)(1) is rationally related to legitimate government interests and does not violate the Equal Protection Clauses of the United States and Ohio Constitutions. We therefore reverse the judgment of the Tenth District Court of Appeals to the extent that it held otherwise. Because we hold that R.C. 2915.01(AAA)(1) does not violate the Equal Protection Clauses, PCSG and Cline's void-for-vagueness argument is no longer moot. Since the court of appeals did not reach the merits of PCSG and Cline's argument that R.C. 2915.01(AAA)(1) is void for vagueness, we remand the case to the Tenth District for consideration of PCSG and Cline's first assignment of error.

Judgment reversed

and cause remanded.

PRESTON, LUNDBERG STRATTON, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

PFEIFER, ACTING C.J., concurs in judgment only.

VERNON L. PRESTON, J., of the Third Appellate District, sitting for BROWN, C.J.

_____

Butler, Cincione & DiCuccio, Gail M. Zalimeni, N. Gerald DiCuccio, and Alphonse P. Cincione, for appellees.

Richard Cordray, Attorney General, Benjamin C. Mizer, Solicitor General, Stephen P. Carney, Deputy Solicitor, Christopher P. Conomy, Assistant Solicitor, and Randall W. Knutti, Assistant Attorney General, for appellant.

Roetzel & Andress, L.P.A., Jim M. Petro, and Jeremy S. Young, urging affirmance for amicus curiae, Ohio Coin Machine Association.

_____