[Cite as *State v. Mole*, 2013-Ohio-3131.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No.98900**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## MATTHEW T. MOLE

DEFENDANT-APPELLANT

**JUDGMENT:**
REVERSED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-557737

**BEFORE:**   Jones, J., Stewart, A.J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:**   July 18, 2013

**ATTORNEYS FOR APPELLANT**

Richard J. Perez
Rosplock & Perez
Interstate Square Bldg. I
4230 State Route 306, Suite 240
Willoughby, Ohio 44094

John A. Fatica
The Standard Building
1370 Ontario Street
Suite 1810
Cleveland, Ohio 44113

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY: Daniel T. Van
        Jesse W. Canonico
Assistant County Prosecutors
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

LARRY A. JONES, SR., J.:

{¶1} Defendant-appellant, Matthew Mole, appeals his conviction for sexual battery. We reverse.

I. Procedural History

{¶2} In 2012, Mole was charged with one count of unlawful sexual conduct with a minor in violation of R.C. 2907.04(A) and one count of sexual battery in violation of R.C. 2907.03(A)(13). He filed a motion to dismiss the sexual battery charge, which the trial court denied.

{¶3} The charges stemmed from a single sexual encounter that 36-year-old Mole, who was a police officer for the city of Waite Hill, had with 14-year-old J.S. Mole met J.S. in an online chat room; J.S. told Mole he was in high school but 18 years of age. J.S. did not know Mole was a police officer.

{¶4} The matter proceeded to a jury trial on the unlawful sexual conduct charge and a bench trial on the sexual battery charge. The jury was unable to return a verdict on the unlawful sexual conduct charge so the court declared a mistrial. The trial court subsequently found Mole guilty of sexual battery, sentenced him to two years in prison, and classified him as a Tier III sex offender. The state elected not to retry Mole on the unlawful sexual conduct charge and dismissed the charge without prejudice.

{¶5} It is from the conviction for sexual battery that Mole appeals, raising the following assignments of error:

[I].    The trial court erred to the prejudice of the defendant-appellant when it denied the defendant-appellant's motion to dismiss where R.C. 2907.03(A)(13) is unconstitutional on its face in violation of the Fourteenth Amendment to the United States Constitution and Article I, Sections 2 and 16 of the Ohio Constitution.

[II].    Whether the trial court erred to the prejudice of the defendant-appellant when it overruled his motion to dismiss the defective indictment in violation of his right to indictment and due process under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 16 of the Ohio Constitution.

[III].    The trial court independently erred by automatically classifying appellant as a Tier III sex offender without a hearing, pursuant to the mandate of Ohio's Adam Walsh Act.

## II.    Constitutionality of R.C. 2907.03(A)(13)

{¶6} In the first assignment of error, Mole argues that the trial court erred in denying his motion to dismiss because R.C. 2907.03(A)(13) violates the Equal Protection Clauses of the United States and Ohio constitutions.

{¶7} R.C. 2907.03(A)(13) prohibits sexual battery and states that "[n]o person shall engage in sexual conduct with another, not the spouse of the offender when * * * the other person is a minor, the offender is a peace officer, and the offender is more than two years older than the other person."

{¶8} The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides, "no State shall * * * deny to any person within its jurisdiction the equal protection of the laws."   Ohio's Equal Protection Clause, Section 2, Article I of the Ohio Constitution, states, "all political power is inherent in the people.

Government is instituted for their equal protection and benefit * * *."

{¶9} Both equal-protection provisions are functionally equivalent and require the same analysis. *Eppley v. Tri-Valley Local School Dist. Bd. of Edn.,* 122 Ohio St.3d 56, 2009-Ohio-1970, 908 N.E.2d 401, ¶ 11.

{¶10} If a statute does not implicate a fundamental right or a suspect classification, courts employ a "rational basis" standard of review, and a statute will not violate equal-protection principles if it is rationally related to a legitimate government interest. *Id.* at ¶ 15, citing *Menefee v. Queen City Metro,* 49 Ohio St.3d 27, 29, 550 N.E.2d 181 (1990). The parties do not dispute that this case does not involve a fundamental right or suspect classification; thus, a rational-basis review applies.

{¶11} "The rational-basis test involves a two-step analysis. We must first identify a valid state interest. Second, we must determine whether the method or means by which the state has chosen to advance that interest is rational." *McCrone v. Bank One Corp.*, 107 Ohio St.3d 272, 2005-Ohio-6505, 839 N.E.2d 1, ¶9, citing *Buchman v. Wayne Trace Local School Dist. Bd. of Edn.*, 73 Ohio St. 3d 260, 267, 1995-Ohio-136, 652 N.E.2d 952.

{¶12} Pursuant to a rational-basis review, the state "'has no obligation to produce evidence to sustain the rationality of a statutory classification.'" *Pickaway Cty. Skilled Gaming, L.L.C. v. Cordray*, 127 Ohio St.3d 104, 2010-Ohio-4908, 936 N.E.2d 944, ¶ 20, quoting *Columbia Gas Transm. Corp. v. Levin,* 117 Ohio St.3d 122, 2008-Ohio-511, 882 N.E.2d 400, at ¶ 91. The party challenging the constitutionality of a law "'bears the

burden to negate every conceivable basis that might support the legislation.'" *Id.*

{¶13} We are reminded that Ohio courts grant substantial deference to the legislature when conducting an equal-protection rational-basis review. *State v. Williams*, 88 Ohio St.3d 513, 531, 2000-Ohio-428, 728 N.E.2d 342. Classifications will be invalidated only if they "'bear no relation to the state's goals and no ground can be conceived to justify them.'" *State v. Peoples*, 102 Ohio St.3d 460, 2004-Ohio-3923, 812 N.E.2d 963, ¶ 7, quoting *State v. Thompkins*, 75 Ohio St.3d 558, 561, 1996-Ohio-264, 664 N.E.2d 926.

{¶14} In this case, the challenge to the statute's constitutionality is a facial challenge; Mole is challenging the statute as a whole, not as the statute was personally applied to him. A facial challenge to the constitutionality of a statute is decided by considering the statute without regard to extrinsic facts. *President & Bd. of Trustees of Ohio Univ. v. Smith*, 132 Ohio App.3d 211, 224, 724 N.E.2d 1155 (4th Dist.1999); *Cleveland Gear Co. v. Limbach*, 35 Ohio St.3d 229, 231, 520 N.E.2d 188 (1988).

### A. Valid State Interest

{¶15} Therefore, in considering the first prong of the rational-basis test, we must determine whether R.C. 2907.03(A)(13) rationally advances a legitimate state interest.

{¶16} The Ohio Supreme Court has noted that "police officers are held to a higher standard of conduct than the general public." *Warrensville Hts. v. Jennings*, 58 Ohio St.3d 206, 207, 569 N.E.2d 489 (1991), citing *Jones v. Franklin Cty. Sheriff*, 52 Ohio St.3d 40, 43, 555 N.E.2d 940 (1990). "Law enforcement officials carry upon their

shoulders the cloak of authority of the state. For them to command the respect of the public, it is necessary then for these officers *even when off duty* to comport themselves in a manner that brings credit, not disrespect, upon their department." (Emphasis added.) *Jennings* at *id.,* citing *Jones* at *id.* "[I]t is incumbent upon a police officer to keep his or her activities above suspicion both on and off duty." *Jennings* at *id.,* citing *Jones* at 44.

{¶17} Because a police officer may be held to a higher standard of conduct than an ordinary citizen, even when the police officer is off duty, prohibiting sexual relationships between police officers and minors may therefore rationally advance a legitimate state interest, we think, especially if the police officer uses his or her occupation to influence the minor into the relationship.

{¶18} But R.C. 2907.03(A)(13) broadly classifies the offender as a "peace officer." Under Ohio law, a "peace officer" includes traditional police officer categories: a sheriff, deputy sheriff, marshal, deputy marshal, municipal police officer, metropolitan housing authority police officer, regional transit authority police officer, state university law enforcement officer, enforcement agent of the department of public safety, veterans' home police officer, port authority police officer, township police constable or officer, and airport police officer. R.C. 2935.01(B). The definition also includes: a department of taxation investigator, a natural resources law enforcement staff officer, a forest officer, a preserve officer, a wildlife officer, a park officer, or a state watercraft officer; the house of representatives sergeant-at-arms if the house of representatives sergeant-at- arms has arrest authority, assistant house of representatives

sergeant-at-arms, the senate sergeant-at-arms, and the assistant senate sergeant-at-arms.

*Id.*

{¶19} Thus, while the state may have a valid interest in creating a law prohibiting sexual conduct between traditionally-defined police officers and minors because police officers are held to a higher standard than ordinary citizens, we question whether the same should be said for each classification of peace officer.

<u>B. Rational Method or Means</u>

{¶20} Our greater concern is with the second prong of the test: whether the state's method or means of achieving its interest is rational.

{¶21} Unlike the other subsections of the sexual battery statute, R.C. 2907.03(A)(13) is unique in that it: (1) has no mens rea requirement and (2) contains no relationship or occupational requirement between the offender and victim.

{¶22} The sexual battery statute, R.C. 2907.03, provides:

(A) No person shall engage in sexual conduct with another, not the spouse of the offender, when any of the following apply:

(1) The offender knowingly coerces the other person to submit by any means that would prevent resistance by a person of ordinary resolution.

(2) The offender knows that the other person's ability to appraise the nature of or control the other person's own conduct is substantially impaired.

(3) The offender knows that the other person submits because the other person is unaware that the act is being committed.

(4) The offender knows that the other person submits because the other person mistakenly identifies the offender as the other person's spouse.

(5) The offender is the other person's natural or adoptive parent, or a

stepparent, or guardian, custodian, or person in loco parentis of the other person.

(6) The other person is in custody of law or a patient in a hospital or other institution, and the offender has supervisory or disciplinary authority over the other person.

(7) The offender is a teacher, administrator, coach, or other person in authority employed by or serving in a school for which the state board of education prescribes minimum standards pursuant to division (D) of section 3301.07 of the Revised Code, the other person is enrolled in or attends that school, and the offender is not enrolled in and does not attend that school.

(8) The other person is a minor, the offender is a teacher, administrator, coach, or other person in authority employed by or serving in an institution of higher education, and the other person is enrolled in or attends that institution.

(9) The other person is a minor, and the offender is the other person's athletic or other type of coach, is the other person's instructor, is the leader of a scouting troop of which the other person is a member, or is a person with temporary or occasional disciplinary control over the other person.

(10) The offender is a mental health professional, the other person is a mental health client or patient of the offender, and the offender induces the other person to submit by falsely representing to the other person that the sexual conduct is necessary for mental health treatment purposes.

(11) The other person is confined in a detention facility, and the offender is an employee of that detention facility.

(12) The other person is a minor, the offender is a cleric, and the other person is a member of, or attends, the church or congregation served by the cleric.

(13) The other person is a minor, the offender is a peace officer, and the

offender is more than two years older than the other person.

{¶23} R.C. 2907.03(A)(1)-(4) require that the offender acted "knowingly," that the

offender had a certain state of mind when he or she committed the crime.[1]

{¶24} R.C. 2907.03(A)(5)-(12) govern offenses where the offender and victim have some sort of relationship; each subsection requires the offender have custody, authority, control, and/or some sort of other authoritative relationship with the victim. For example, R.C. 2907.03(A)(6) prohibits sexual conduct between an employee and patient of a hospital; R.C. 2907.03(A)(7) prohibits sexual conduct between a teacher and a student at the same school; and R.C. 2907.03(A)(10) prohibits sexual conduct between a mental health professional and the professional's client.

{¶25} R.C. 2907.03(A)(8), (9), and (12), concern offenses where the victim is a minor. In each of these subsections, there is a relationship requirement or occupational connection. R.C. 2907.03(A)(8) prohibits employees of colleges and universities from having sexual relationships with minors attending their institutions; it does not however prohibit them from having sexual relationships with minors attending colleges or universities where they are not employed or serving. Likewise, while R.C. 2907.03(A)(9) and (12) prohibit coaches, scouting leaders, instructors, and clerics from having sexual relationships with members of their teams, troops, and congregations, the statute does not prohibit such relationships with other minors not under the influence or supervision of the offender.

---

[1] "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).

**{¶26}** R.C. 2907.03(A)(13) is different. This subsection prohibits a peace officer from having sexual conduct with a minor more than two years younger than the officer, without consideration given to whether (1) the peace officer used his or her position to facilitate the offense or the victim was in the custody, control, or under the supervision or influence of the peace officer; (2) the victim knew that the offender was a peace officer; or (3) the peace officer knew or should have known the victim was a minor. Moreover, not only does this statute punish relationships such as the one in this case where the age difference was great, but it also punishes relationships between a 17-year-old minor and a 19-year-old peace officer, so long as there is more than a two year age difference.

**{¶27}** The state argues that the legislature's intent was to protect minors from exposure to certain types of sexual conduct and in order to achieve that interest, it was necessary to hold peace officers to a higher standard by expanding the statute to encompass situations where there is "even the possibility of influence over a child with no requirement that the relationship arise while the peace officer was performing official duties."

**{¶28}** It appears from a review of the legislative history that the amendment to the sexual battery statute prohibiting sexual conduct between peace officers and minors, as originally introduced in the Ohio House of Representatives, did not include a relationship requirement or element. *See* State Senator Keith Faber's speech to the Ohio Senate, http://www.ohiochannel.org/medialibrary/media.aspx?fileId=117520. The bill was subsequently amended in the Ohio Senate to include a relationship clause to make it

"consistent with the other sections of the sexual battery [statute] * * * based on the position of trust between the victim and the offender." *Id.*

{¶29} But the relationship language was subsequently removed by amendment in the Ohio Senate because the bill's sponsor was concerned about the state's ability to prosecute offenders "under that language." *Id.*

{¶30} But R.C. 2907.03(A)(10) requires the state to show that the offender induced the victim "to submit by falsely representing to the other person that the sexual conduct is necessary for mental health treatment purposes." Clearly, subsection (A)(10) requires more than a mere professional-patient relationship.

{¶31} The legislature's intent in originally enacting R.C. 2907.03 was to deter sexual conduct "'in a variety of situations where the offender takes unconscionable advantage of the victim.'" *State v. Funk*, 10th Dist. No. 05AP-230, 2006-Ohio-2068 at ¶ 97, quoting 1974 Committee Comment to H.B. 511. The legislature has subsequently amended the sexual battery statute to add categories where an offender has authority or control over the intended victim. The problem with R.C. 2907.03(A)(13) is that it stands alone among the subsections in that it requires no intent on behalf of the offender and no relationship or occupational connection between the offender and the victim.

{¶32} This appears to be a case of first impression in Ohio. Moreover, we were unable to find a similar law in any other state in the nation. In looking at other equal protection challenges to Ohio's sexual battery statute, the Ninth District Court of Appeals upheld such a challenge to R.C. 2907.03(A)(7) in *State v. Shipley*, 9th Dist. No.

03CA008275, 2004-Ohio-434.

{¶33} In *Shipley*, the court found the statute was "rationally related to its intended purpose of preventing teachers from taking unconscionable advantage of students by using their undue influence over the students in order to pursue sexual relationships." *Id.* at ¶ 81. The court noted the connection between the offense and the occupation of the offender, i.e., that it is unlawful when teachers use their undue influence over students to pursue sexual relationships, and held that the state had a legitimate interest in protecting minors from their teachers who might take advantage of them. *Id.*

{¶34} Likewise, in this case, the state might have a legitimate interest in protecting minors from police officers who use their profession to pursue inappropriate sexual relationships. But there exists no occupational connection or relationship requirement in R.C. 2907.03(A)(13). We agree with Mole that one's occupation as a peace officer alone, without more, does not provide a person with an "unconscionable advantage" over a minor.

{¶35} Consequently, because the state's method or means of achieving its interest is not rational, R.C. 2907.03(A)(13) fails the second prong of the rational-basis test.

{¶36} In sum, while the state may have a legitimate interest in protecting minors from those who might use their undue influence over them in order to pursue sexual relationships, Mole has been able to show that R.C. 2907.03(A)(13) bears no rational relationship to a legitimate government interest.

{¶37} Therefore, we find that R.C. 2907.03(A)(13) violates the Equal Protection

Clauses of the Ohio and United States constitutions. The trial court erred in denying Mole's motion to dismiss.

**{¶38}** The first assignment of error is sustained.

### III. Remaining Assignments of Error Moot

**{¶39}** In the second assignment of error, Mole argues that the trial court should have granted his motion to dismiss due to a defective indictment. In the third assignment of error, Mole challenges his classification as a Tier III sex offender. Due to our disposition of the first assignment of error, the second and third assignments of error are moot. App.R. 12(A)(1)(C).

**{¶40}** Accordingly, judgment reversed.

**{¶41}** The case is remanded with instructions to grant Mole's motion to dismiss with respect to his claim declaring R.C. 2907.03(A)(13) violative of the Equal Protection Clauses of the United States and Ohio constitutions. The court is also ordered to vacate his conviction and sex offender classification.

It is ordered that appellant recover from appellee his costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LARRY A. JONES, SR., JUDGE

MELODY J. STEWART, A.J., CONCURS IN
JUDGMENT ONLY WITH SEPARATE OPINION;
FRANK D. CELEBREZZE, JR., J., DISSENTS
WITH SEPARATE OPINION

MELODY J. STEWART, A.J., CONCURRING IN JUDGMENT ONLY:

{¶42} I concur with the disposition of the appeal, but do so for reasons different than those offered by the majority opinion.

{¶43} Although the statutory definition of a "peace officer" is seemingly broad, the legislature was acting within its prerogative when so defining that term. The legislature could rationally find that any person imbued with police authority, regardless of that person's specific duties, fell within a class of persons who could abuse a position, particularly in relation to minors. In any event, the majority's concerns regarding the overbreadth of the peace officer classification are not present in this case because Mole was, in fact, a police officer. So concerns about whether the definition of a peace officer is overbroad because it includes more esoteric positions like "forest officer" and "department of taxation investigator" is immaterial.

{¶44} I do agree with the majority that Mole was prosecuted under R.C.

2907.03(A)(13) for conduct that the statute irrationally criminalizes. To be sure, the right of adults to engage in private sexual conduct in the exercise of their liberty does not apply to minors or "persons who might be injured or coerced or who are situated in relationships where consent might not easily be refused." *Lawrence v. Texas*, 539 U.S. 558, 578, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003). However, the statute arbitrarily prohibits any form of sexual conduct between a peace officer and a minor without regard to whether the offender's position as a peace officer was a motivating factor for either the offender or the victim.

{¶45} The fundamental premise behind R.C. 2907.03(A)(13) and, indeed, the other divisions of R.C. 2907.03, is to prevent those in positions of authority from using their authority to coerce, compel, or force capitulation to that authority. Thus, the statute singles out teachers, coaches, mental health professionals, prison staff, clergy, scout leaders, and, of course, police officers. It requires no citation to authority to recognize that the common feature among these classes of offenders is that they all have the potential to abuse their authority. In the case of police officers, the potential to force a victim's capitulation to sexual advances in exchange for favorable police treatment is manifest.

{¶46} But the goal of protecting minors from capitulating to sexual coercion brought about by abuses of police authority cannot be a factor when the minor is unaware that the other person is a police officer. Crucial to this case is the uncontested fact that Mole's position as a police officer had nothing to do with the sexual activity he engaged

in with the victim: Mole did not tell the victim he was a police officer and the victim testified that he had no idea that Mole was a police officer. The evil to be prevented by R.C. 2907.03(A)(13), the misuse of police authority to compel or coerce sexual conduct, was simply not present in this case.

**{¶47}** Apart from the statute criminalizing conduct that it was not designed to prevent, the age distinction employed by the statute is arbitrary. The age requirement that the offender be "more than two years older than the other person" seemingly contradicts the stated intent of the statute. While it seems unlikely that a person under the age of 20 could be named a peace officer, it is possible. So the statute rather contradictorily does not criminalize sexual conduct between a peace officer and a minor who is two years younger or less than the peace officer, even if the peace officer actually did intend to coerce the victim's capitulation through the authority of the office.

**{¶48}** Mole's sexual conduct with a minor was reckless. But he was not found guilty of that offense under R.C. 2907.04. Instead, he was convicted under a statute that in some circumstances criminalizes conduct that it did not intend to prevent, and yet in other circumstances allows conduct that it intended to criminalize. Because Mole's conviction was not obtained to punish any ill sought to be prevented by the statute, it is unconstitutional.

FRANK D. CELEBREZZE, JR., J., DISSENTING:

**{¶49}** Respectfully, I dissent from the majority's holding that R.C. 2907.03(A)(13) is unconstitutional on its face.

**{¶50}** As the majority recognizes, a sexual relationship between a minor and an adult is unprotected conduct in this instance, and a peace officer is not a suspect class. Therefore, rational basis review is to be applied. Here, that means the statute will be upheld as constitutional if it bears some rational relationship to a legitimate governmental interest. *State v. Williams,* 88 Ohio St.3d 513, 530, 2000-Ohio-428, 728 N.E.2d 342.

> Under the Equal Protection Clause, a legislative distinction need only be created in such a manner as to bear a rational relationship to a legitimate state interest. These distinctions are invalidated only where "they are based solely on reasons totally unrelated to the pursuit of the State's goals and only if no grounds can be conceived to justify them."

*Id.*, quoting *Clements v. Fashing*, 457 U.S. 957, 963, 102 S.Ct. 2836, 73 L.Ed.2d 508 (1982).

**{¶51}** Review of the statute requires us to determine whether the statute is rationally related to a legitimate government interest. That interest, based on the location of R.C. 2907.03(A)(13), is ostensibly to protect children from the influences of those holding a position of trust or power that could be used to coerce a sexual relationship. R.C. 2907.03 prohibits sexual conduct between minors and a number of people who may exert undue influence over them. From parents, to teachers, to religious leaders — all are prohibited from using their position of power to develop a sexual relationship with their charges. The part relating to peace officers differs from the other subsections, which cover those situations where some type of relationship exists, be it parental or pedagogical. This difference is related to a second purpose embodied in R.C. 2907.03(A)(13) alone.

{¶52} The provision relating to peace officers was added to R.C. 2907.03 in 2009 as a response to a sexual relationship between a minor and a police officer that caused a loss of respect for the officer and his department among the local community. While other portions of R.C. 2907.03 require a direct relationship between the adult and the child, R.C. 2907.03(A)(13) does not because peace officers are held to a higher standard of behavior and have an obligation to protect the citizens of this state. Therefore, the statute embodies two legitimate legislative goals: the protection of children and prohibiting behavior by peace officers that would bring disrepute to their ranks. This also demonstrates why R.C. 2907.03(A)(13) is a strict liability offense with no mens rea element required in the indictment, contrary to appellant's arguments in his second assignment of error.

{¶53} This is a key distinguishing factor for peace officers from the other categories of those affected by R.C. 2907.03. Others only hold a position of trust or power over those directly in their charge. This is not true of peace officers, who maintain a sphere of influence over their communities broadly and who must instill in the public the belief that these officers are deserving of the power and authority granted to them.

{¶54} The majority takes issue with the use of "peace officer" in the statute rather than a more narrow class of individuals that would be more closely related to the state's goal. However, each of the officials listed in the definition of "peace officer" are granted a great deal of power and authority over the public in their respective bailiwicks.

"For them to command that respect of the public, it is necessary then for these officers even when off duty to comport themselves in a manner that brings credit, not disrespect, upon their departments." *Jones v. Franklin Cty. Sheriff*, 52 Ohio St.3d 40, 43, 555 N.E.2d 940 (1990).

{¶55} The statute is not an arbitrary or discriminatory embodiment of these dual goals. The majority takes issue with the fact that R.C. 2907.03(A)(13) is different from the other subsections because it requires no intent on behalf of the offender and no relationship or occupational connection. However, that is because of the dual purposes it embodies. To further those goals, the state legislature has singled them out to prohibit sexual interaction with minors. That decision is not arbitrary or discriminatory. It furthers the goal of fostering a trusted and respected policing authority.

{¶56} Appellant cannot carry the burden of demonstrating that this statute is unconstitutional. The state's interest in maintaining a respected policing arm, coupled with its interest in protecting children, is achieved by the statute. A facial challenge must fail. Therefore, I find the statute constitutional and would uphold appellant's conviction for sexual battery and his classification as a Tier III sex offender as required by R.C. 2950.01(G)(1)(a).